PHILIPS INDUSTRIES, INC. and Mobil Temp, Inc., Plaintiffs-Appellees,

v.

STATE STOVE AND MANUFACTURING COMPANY, INC., Defendant-Appellant.

No. 74–1841.

United States Court of Appeals, Sixth Circuit.

July 11, 1975.

Harrington A. Lackey, Nashville, Tenn., Paul R. Puerner, Michael, Best & Friedrich, Milwaukee, Wis., for defendant-appellant.

Thomas Wardlaw Steele, Gullett, Steele, Sanford & Robinson, Nashville, Tenn., Donald K. Harness, Harness, Dickey & Pierce, Birmingham, Mich., for plaintiffs-appellees.

Before PHILLIPS, Chief Judge, ED-WARDS, Circuit Judge, and HER-MANSDORFER,* District Judge.

PHILLIPS, Chief Judge.

Mobil Temp, Inc. (Mobil Temp), a wholly owned subsidiary of Philips Industries, Inc., (Philips), is the assignee of U.S. patent No. 3,353,528 and the reissue of that patent, Re. 27,392, both of which issued to Donald E. Robinson. This action was brought by Mobil Temp and Philips against State Stove Manufacturing Co., Inc. (State Stove) for infringement. State Stove counterclaimed for declaratory judgment of invalidity. The District Court held the patent claims in suit valid and infringed. We reverse, holding the patent to be invalid, and, therefore, do not reach the infringement issue.

## 1) The Invention

The invention described in the Robinson patent is a gas-fired water heater whose primary commercial use is in recreational vehicles, i. e., campers, motor homes and small trailers. The heating portion of the water heater contains a cylindrical tube, closed at one end, which extends horizontally into the water to be heated. This is known as the chamber tube. Within this tube, but spaced from its interior walls, is another tube, designated the flame tube, which is open at both ends, and which has a cross section generally concentric with the cross section of the chamber tube. An LP gas burner is located within the flame tube. A vent tube is connected to the chamber tube, and exhausts the products of combustion into a recessed area which provides a passage to the exterior of the vehicle. The flame tube is also connected to this recessed area, and draws air to support the combustion through the recessed area. In operation the burner draws air from the exterior through this recessed area, and the fuel is burned on the inside of the flame tube. The products of combustion flow through the flame tube into the chamber tube, and then into the annular space between the two tubes. The gases are thereafter vented into the upper portion of the recessed area and then into the outside atmosphere.

The accused device is not patented and is outwardly similar in appearance to the Robinson heater. The difference in the two devices is in the construction of the components on the interior of the chamber tube. The State Stove heater does not have a separate flame tube. Instead, a flattened "V" shaped transverse metal plate or baffle extends from one wall to the other for a portion of the length of the chamber tube. The burner is located under the baffle, and the products of combustion flow down between the chamber tube and one side of the baffle, and then back between the other side of the baffle and the chamber tube. The gases are then vented into a recessed area which provides a passage to the exterior. The air inlet for the burner is also located within this recess.

Robinson's original patent issued on November 21, 1967, with 12 claims. On June 17, 1972, after the filing of the original complaint in this suit, the reissue patent issued with 59 claims. A supplemental complaint was filed with the District Court, alleging that 42 of the reissue claims were infringed. Prior to trial the parties selected and stipulated that claims 15, 42–44 and 52 were representative of all infringed claims. These five claims and the specification comprise the patent in suit. The District Court findings of fact 21 through 26, setting forth these five claims, are made an appendix to this opinion.

## 2) Validity

State Stove contends that the patented subject matter is obvious within the meaning of 35 U.S.C. § 103 on the basis of prior art which was before the Patent Office during the prosecution of the patent application. One of the principal references relied upon, Carlson, No.

* Honorable H. David Hermansdorfer, Judge, United States District Court for the Eastern District of Kentucky, sitting by designation.

3,028,843, was cited originally by the Patent Office in a rejection of the claims of the original patent. The other principal reference, Maher, No. 2,717,580, was also known to the Patent Office and was cited as of record on the Robinson patent.

The District Court recognized and applied the familiar inquiry into obviousness as required in *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), and as set out by this court in *Kolene Corp. v. Motor City Metal Treating, Inc.,* 440 F.2d 77, 81 (6th Cir.), *cert. denied,* 404 U.S. 886, 92 S.Ct. 203, 30 L.Ed.2d 169 (1971). In *Kolene* we stated that when the District Court ascertains "[d]ifferences between the prior art and the claims at issue" it is making "findings of fact which are binding on appeal unless the findings are clearly erroneous. Rule 52(a), Fed.R.Civ.P."[1] After the factual background has been established, the ultimate determination of obviousness "is a conclusion of law with which this Court may disagree based on the established findings of fact." *Id.*

The District Court determined the difference between the Robinson patent and the prior art, concluding that:

> There is no real dispute as to the lack of novelty in the tubular combustion chamber of the water heater of the Robinson patent. This feature is found to be old in the prior art as disclosed in both Maher patent No. 2,717,580 dated September 13, 1955, and in the Friedberg patent No. 2,887,- 074 dated May 19, 1959.

> The Maher patent discloses a horizontally disposed fire tube heater comprising a cylindrical jacket or chamber tube having a closed end inside of which a fire or flame tube is disposed concentrically to provide an annular passageway between the flame tube and the chamber tube. A burner is mounted in the inlet of the flame tube and a vent or flue pipe is connected to the chamber tube so that the hot gases and products of combustion produced at the burner will flow from the burner down to the open end of the flame tube and then back through the annular passageway between the two tubes and then out to atmosphere through the flue pipe. The hot gases flowing through the tubular combustion chamber serve to heat a liquid such as water which is circulated through the shell in which the combustion chamber is mounted.

> Friedberg shows a tubular type combustion chamber with a central baffle similar to that used in defendant's water heater. The Friedberg incinerator burner construction employs a chamber tube (with a closed end) having a centrally located baffle member mounted therein. A burner is mounted at the inlet to the tube beneath the baffle and a vent tube is connected to the upper portion of the chamber tube. The products of combustion and hot gases from the burner will travel down to the closed end of the chamber tube beneath the baffle and then back above the baffle to vent tube and then out to atmosphere through the vent tube.

> The recess feature of the Robinson patent is found to be old as disclosed in prior art Carlson patent No. 3,028,- 843, dated April 10, 1962, and in the commercial embodiment of the Carlson heater identified as the Bowen P–112 heater. The recreational vehicle gas water heater disclosed in the Carlson patent is mounted inwardly from the plane of the outside wall of the trailer to provide a recess in which the heater controls and heater flue box are mounted. The inlet to the lower branch of the U-shaped combustion tube and the outlet of the flue box both open into the control recess. The control recess referred to in the Carlson patent extends across the entire face of the heater behind the cover plates so that it is clear that both the

---

1. The two other factual inquiries, both of which were investigated in the District Court, are "the scope and content of the prior art" and "the level of ordinary skill in the pertinent art." *Kolene, supra,* 440 F.2d at 81.

inlet to the combustion tube and the outlet of the flue box both open into a common pressure zone or chamber. The presence of the recess concept in the Carlson patent was verified by the testimony of defendant's expert, Ernest Wenczl, and the deposition testimony of Richard Pfluger, an engineer employed by Atwood Vacuum Machine Company, a manufacturer of recreational vehicle water heaters and a competitor of the parties to this litigation.

In determining whether the prior art suggested the invention, the District Court restated its factual findings:

Thus, there is no novelty in the use of the following feature in a heating device:

(a) use of a tubular combustion chamber;

(b) use of jacket or tubular chamber which encompasses the combustion chamber, thus furnishing a means to exhaust products of combustion; or

(c) use of a recess which houses the controls, intake and exhaust portions of the heating device.

■ We hold that these findings of fact are not clearly erroneous, but to the contrary are supported by substantial evidence.

The problem with the decision of the District Court is in the following additional findings:

The following items of the Robinson patent are novel:

(a) the air inlet and exhaust vent originate and are located in the recess on the same vertical plane and in the same pressure zone; and

(b) it is substantially flush (⅝″ projection) with the vehicle wall, as compared to the 2½″ required of prior art.

Neither of these two items, which the District Court found to be novel, is contained within any of the claims in suit.

2. Claim 15 contains the narrowest limitation of the pertinent structure. The other claims in

(See Appendix.) "The proposition is too well settled to need citation that the claims measure the invention," *Kaiser Indus. Corp. v. McLouth Steel Corp.*, 400 F.2d 36, 49 (6th Cir. 1968), *cert. denied*, 393 U.S. 1119, 89 S.Ct. 992, 22 L.Ed.2d 124 (1969). In *Ohio Citizens Trust Co. v. Lear Jet Corp.*, 403 F.2d 956, 958 (10th Cir. 1968), *cert. denied*, 394 U.S. 960, 89 S.Ct. 1308, 22 L.Ed.2d 561 (1969), the rule was stated as follows: "The patent must be judged by what is claimed for it in the patent application—not by what is asserted in subsequent litigation." It is to be emphasized that the invention is measured by the claims and not by the specification. *Minnesota Mining & Mfg. Co. v. Kent Indus., Inc.*, 409 F.2d 99, 101 (6th Cir. 1969).

■ This principle is enunciated in another provision of the patent laws. 35 U.S.C. § 112 states: "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." When the patentee obtains the allowance of claims of broad scope and when the clear language of these claims reads on the prior art, the claims cannot be salvaged by incorporating narrow limitations from the specification. Although the claims must be read in light of the specification, *see United States v. Adams*, 383 U.S. 39, 49, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966), specific elements, completely absent in the claims, may not be inferred by reference to the specification. This is particularly crucial where, as here, the elements not set forth in the claims are the linch-pin of patentability.

In the present case the language of claim 15 [2] locates the chamber tube inlet and vent outlet as follows:

said vent tube means located generally within the confines of said cavity and

with said chamber and flame tube means extending interiorly beyond said mounting plate

suit disclose the relationship of the inlet and outlet in broader terms.

with said inlet and said outlet located substantially within said cavity whereby unbalanced pressure effects on said inlet and outlet are generally obviated.

The only positive structural limitation is that "said inlet and said outlet [are] located substantially within said cavity." There is no mention whatsoever of any language which could be construed to require that the inlet and exhaust are "on the same vertical plane." As for the inlet and exhaust being "in the same pressure zone," there are no positive structural limitations which would require this limitation. While the "whereby" clause may be of some value in determining the scope of the claim, it is no substitute for clear and positive language defining the structure. In this case the whereby clause only defines the results which follow from the structure which is described, and cannot be read to add an additional limitation to the claim.

The breadth of this portion of the claim brings it within the teaching of the Carlson patent, in which, as correctly found by the District Court, "It is clear that both the inlet to the combustion chamber and the outlet of the flue box both open onto a common pressure zone or chamber."

The "substantially flush" feature with the corresponding measurement is not set forth in the claims. There is no language in the claims from which this limitation can be inferred.

■ The two items quoted above, which the District Court found to be novel, are not a part of the claims and cannot have the effect of breathing life into an otherwise invalid patent. When these two items are disregarded, we are left with a finding of fact that none of the elements set forth in the claims is novel. As stated above, we hold the findings of the district court as to these elements not to be clearly erroneous.

■ Given that the individual claim elements are old and disclosed in the prior art, if this device is to be patentable then there must be that "impalpable something," *Harvey v. Levine*, 322 F.2d 481, 485 (6th Cir. 1963), in the combination itself that would render the invention unobvious. The Supreme court decisions require that patents for the combination of old elements receive special scrutiny "with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." *Great Atlantic and Pacific Tea Co. v. Supermarket Equip. Corp.*, 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950). The concept of "synergistic result," which is "when the whole in some way exceeds the sum of its parts," has evolved to determine what constitutes the "key requirement," of patentability. *Anderson's-Black Rock v. Pavement Salvage Co., Inc.*, 396 U.S. 57, 60–61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); *Great Atlantic & Pacific Tea Co., supra*, 340 U.S. at 152, 71 S.Ct. at 130.

■ There is nothing in the record which indicates that the tubular combustion chamber, the surrounding tubular chamber and the placement of the inlet and outlet in a recess produces any new or unexpected cooperative result. Each has its own advantages. The flame tube is an efficient device for transferring the heat to the chamber tube. The recess concept is likewise a convenient and inexpensive method of mitigating the effect of fluctuating air pressure. However, both of these benefits function independently. Each element operates as well separately as it does in combination, and as in *Anderson's-Black Rock, supra*, 396 U.S. at 60, 90 S.Ct. at 307, the combination "though perhaps a matter of great convenience, did not produce a 'new or different function,' *Lincoln Engineering Co. v. Stewart-Warner Corp.*, 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008 within the test of validity of combination patents."

### 3) Commercial Success

■ The Robinson device was successful commercially, and, as found by the District Court, "in a relatively short time it replaced approximately 70% of the market previously satisfied by the prior art type heaters." However, even

though "the combination filled a long felt want and has enjoyed commercial success . . . those matters 'without invention will not make patentability.'" 396 U.S. at 61, 90 S.Ct. at 308. Regardless of the success of this venture, "more than that is needed for invention." *Id.* at 63, 90 S.Ct. at 309. *See Monroe Auto Equip. Co. v. Heckethorn Mfg. & Supply Co.*, 332 F.2d 406, 414 (6th Cir.), *cert. denied*, 379 U.S. 888, 85 S.Ct. 160, 13 L.Ed.2d 93 (1964).

Since the patent is invalid, we do not find it necessary to reach the issue of infringement or the other issues of validity raised by State Stove.

Reversed.

Costs are taxed against appellees.

### APPENDIX

Claims in Suit

21. Of the 42 claims alleged to be infringed by defendant, plaintiff selected for trial as representative of all infringed claims: claim 15, claim 42, claims 43 and 44, and claim 52. The parties stipulated to the rewriting of the claims in outline form.

22. Claim 15 reads as follows:

In combination with a heater comprising

(A) vent tube means comprising a first tubular body having an outlet for exhausting products of combustion at one end and a passageway connected to an inlet at an opposite end.

(B) chamber tube means comprising a second tubular body connected to said first tubular body and having one end opened and connected to said inlet and having an opposite end closed, and

(C) flame tube means comprising a third tubular body open at both ends and located within and spaced from paid second tubular body and connected to said first tubular body

with one of said both ends connected to said inlet and with the other of said both ends spaced from said opposite end of said second tubular body,

said one of said both ends being in communication with the atmosphere,

(D) means for generally blocking said third body from said first body at said one of said both ends,

(E) burner means for providing a supply of fuel to be burned in said flame tube means and

having an outlet located within said flame tube means and

an air inlet located outside of said flame tube means whereby air from the atmosphere is drawn for combustion, and

(F) passage means defining a passage for the products of combustion from said flame tube means and between said second and third tubular bodies to said inlet, said passageway, and said outlet,

said first tubular body extending generally vertically and with said second and third tubular bodies extending generally horizontally:

apparatus adapted for mounting said heater to a vertical wall construction of a trailer having an opening therein, said apparatus comprising

(G) a mounting plate having a dished construction defining a cavity extending interiorly from the outside surface of the wall construction,

(H) means supporting said heater to said mounting plate

with said vent tube means located generally within the confines of said cavity and

with said chamber and flame tube means extending interiorly beyond said mounting plate

with said inlet and said outlet located substantially within said cavity whereby unbalanced pressure effects on said inlet and outlet are generally obviated.

23. Claim 42 reads as follows:

A heater adapted to be mounted in an outside wall having a generally vertical outside surface and a heater-re-

ceiving opening therethrough, said heater comprising:

(A) mounting means for mounting said heater with respect to said wall,

said mounting means including partition means spaced inwardly from the plane of said outside surface and defining a recess between said partition means and said plane;

(B) vent tube means comprising a generally vertically extending first tubular body having an outlet for exhausting products of combustion at one end and a passageway connected to an inlet at an opposite end,

said first tubular body constituting the entire vertically extending flue for said heater and being disposed wholly within said recess;

(C) chamber tube means comprising a second tubular body connected to said first tubular body and having one end opened and connected to said inlet and having an opposite end enclosed;

(D) flame tube means comprising a third tubular body open at both ends and located within and spaced from said second tubular body, and connected to said first tubular body

with one of said both ends connected to said inlet and with the other of said both ends spaced from said opposite end of said second tubular body,

said one of said both ends being in communication with the atmosphere;

(E) means for generally blocking said third body from said first body at said one of said both ends;

(F) burner means for providing a supply of fuel to be burned in said flame tube means and

having an outlet located within said flame tube means and

an air inlet located outside of said flame tube means whereby air from the atmosphere is drawn for combustion; and

(G) passage means defining a passage for the products of combustion from said flame tube means and between said second and third tubular bodies to said inlet, said passageway, and said outlet,

said second and third tubular bodies extending generally horizontally.

24. Claim 43 reads as follows:

A heater as claimed in claim 42, wherein

said first tubular body has a vertical height less than the horizontal length of said second tubular body.

25. Claim 44 reads as follows:

A heater as claimed in claim 42, wherein

said one of said both ends of said third tubular body is disposed within said recess.

26. Claim 52 reads as follows:

A heater adapted to be mounted in an outside wall having a generally vertical outside surface and a heater-receiving opening therethrough, said heater comprising:

(A) mounting means for mounting said heater with respect to said wall,

said mounting means including partition means spaced inwardly from the plane of said outside surface and defining a recess between said partition means and said plane;

(B) vent tube means comprising a first tubular body disposed in said recess having an outlet for exhausting products of combustion at one end and a passageway connected to an inlet at an opposite end;

(C) chamber tube means comprising a second tubular body connected to said first tubular body and having one end opened and connected to said inlet and having an opposite end closed;

(D) flame tube means comprising a third tubular body open at both ends and located within and spaced from said second tubular body, and connected to said first tubular body

with one of said both ends connected directly to and supported in part by

said first tubular body at said inlet and

with the other of said both ends spaced from said opposite end of said second tubular body,

said one of said both ends being in communication with the atmosphere;

(E) means for generally blocking said third body from said first body at said one of said both ends;

(F) burner means for providing a supply of fuel to be burned in said flame tube means and

having an outlet located within said flame tube means and

an air inlet located outside of said flame tube means whereby air from the atmosphere is drawn for combustion; and

(G) passage means defining a passage for the products of combustion from said flame tube means and between said second and third tubular bodies to said inlet, said passageway, and said outlet,

said first tubular body extending generally vertically and with said second and third tubular bodies extending generally horizontally.