George DICKSTEIN, Plaintiff-Appellee,

v.

SEVENTY CORPORATION and Peter Boyko, Defendants-Appellants.

George DICKSTEIN, Plaintiff-Appellee,

v.

GRANTHAM, INC.,
Defendant-Appellant.

Nos. 75–1121, 75–1122.

United States Court of Appeals,
Sixth Circuit.

Aug. 25, 1975.

Certiorari Denied Jan. 12, 1976.

See 96 S.Ct. 787.

William S. McCoy, Jr., Bosworth, Sessions & McCoy, Anthony J. Hartman, Robert B. Haas, Burke, Haber & Berick, Cleveland, Ohio, for defendants-appellants in No. 75–1121.

Anthony J. Hartman, Robert B. Haas, Burke, Haber & Berick, Cleveland, Ohio, for defendant-appellant in No. 75–1122.

Richard J. Egan, Baldwin, Egan, Walling & Fetzer, Cleveland, Ohio, for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and McCREE and LIVELY, Circuit Judges.

PHILLIPS, Chief Judge.

George Dickstein, owner of U. S. Patent No. 3,711,864, and Sports Products Corporation, of which Dickstein is president, brought this action for infringement against Seventy Corporation, Grantham, Inc., and Peter Boyko. The District Court rejected the defendants' counterclaim for declaratory judgment

of invalidity and held the patent valid and infringed. We reverse the finding of validity and therefore do not reach the issue of infringement.

The Dickstein patent discloses a protective helmet, such as the plastic souvenir baseball helmets which are well known to baseball fans. The principal inventive feature of the helmet is an allegedly novel configuration for joining the interior helmet liner to the helmet shell. Molded on the interior of the helmet are a plurality of generally cylindrical studs. The liner is manufactured with holes corresponding to the placement of studs. The diameter of the holes is slightly smaller than the large end of the stud, and the liner is pressed into place with the studs providing a tight friction fit with the liner. In one disclosed embodiment the studs are manufactured in a cylindrical shape, and then a hot iron is used to expand the end of the stud after the liner has been placed in position. Another embodiment contemplates a "snug, frictional fit" without the subsequent expansion of the end of the stud. Claim 1 of the patent may be read broadly to cover both of these embodiments and requires that "the inner end of each of said studs [is] expanded adjacent the inside of said cup bottom to a size larger than its associated through opening." Claim 3 requires that the stud "pass with friction" through a hole in the liner.

The validity of the Dickstein patent was attacked by the defendants in a counterclaim for declaratory judgment of invalidity. After an extensive review of the prior art, the District Court rejected the contention that the subject matter of the patent would have been obvious to one of ordinary skill in the art under 35 U.S.C. § 103. The District Court stated that:

> Upon the facts thus presented, the Court finds that the Dickstein '864 patent provided improvement of the helmet art by molding the helmet with inwardly extending studs integral to the crown thereof instead of by adhesives, as well as an improvement in

harness art by securing it to the inner lining of the helmet by a method of four friction snaps or interference snaps in the form of cylindrical hollow cups forced over the enlarged end of the stud.

The Court having factually determined the scope of the prior art and the improvement the patentee achieved over the prior art concludes as a matter of law that the Dickstein '864 patent is a combination of old elements assembled, or combined, in such a way as to produce new, advanced and improved results; that is to say, a combination or assembly of old elements which produce a surprising or unusual result, and which would not have been expected by a person having ordinary skill in the pertinent art.

Conversely stated, the Court concludes that the defendants have failed to prove their affirmative defense of obviousness by clear and convincing evidence, i. e., that the old elements assembled or brought together, do not combine with one another to produce, in some way or manner, a surprising or unusual result which should be characterized as an "aggregation" of old elements which cannot support a valid patent.

Other asserted grounds of invalidity also were rejected.

The District Court required the defendants to "prove their affirmative defense of obviousness by clear and convincing evidence." This quantum of proof was required by this court in *Campbell v. Spectrum Automation Company,* 513 F.2d 932 (6th Cir. 1975), where evidence as to validity involved oral testimony as to the identity of the inventor. That opinion expressly states that "we do not commit this Circuit to any general rule requiring the application of this standard in all patent cases." 513 F.2d at 937. Our decision in *Campbell* was limited to the factual situation there involved. We expressly reserved a decision "as to when the clear and convincing standard should be applied in other

situations involving the statutory presumption of validity." *Id.*

This reservation recently was repeated by this court in *Sperberg v. Goodyear Tire and Rubber Company,* 519 F.2d 708 (6th Cir. 1975). In that case we rejected the contention of the patent holder that the trial court should have instructed the jury that "the issuance of the patent was cogent evidence from which a presumption arises, that, by itself, carries [the patent owner's] burden of proof as to validity in the absence of clear and convincing evidence to the contrary." 519 F.2d 713. *Sperberg* further states that the presumption of validity "has no independent evidentiary value, however, but only serves to place the burden of proof on a party who asserts invalidity. *Rains v. Niaqua, Inc.,* 406 F.2d 275, 278 (2d Cir. 1969), *cert denied,* 395 U.S. 909, 89 S.Ct. 1751, 23 L.Ed.2d 222 (1969)." 519 F.2d 713. Although the District Court in *Sperberg* instructed that invalidity must be proved by clear and convincing evidence, the jury found that the patents in issue were invalid. On appeal, this court found no reversible error in the District Court's instructions and specifically reserved ruling on the proper standard of proof. If the jury found that the evidence of invalidity was clear and convincing, it assuredly would have found that the allegations of invalidity were supported by more than a preponderance of the evidence.

We find no reported decision in this Circuit determining the quantum of proof required on the issue of obviousness. In answering this heretofore unresolved question, we make reference to *Campbell*, which traces the patent presumption of validity from its inception to its present form as codified in 35 U.S.C. § 282. As our discussion of the presumption indicates, *see* 513 F.2d at 935–37, the strict standard is necessary when unusual factual circumstances, by their very nature, require it. Certain testimony may be inherently suspect, as, for example, where oral testimony is offered to prove that the person to whom the patent was issued was not the inventor, or where oral testimony is offered to establish prior public use, *see generally Campbell, supra,* or where there are allegations of fraudulent conduct, *see Schnadig Corp. v. Gaines Mfg. Co., Inc.,* 494 F.2d 383, 392 (6th Cir. 1974) ("Fraud or unclean hands are not to be lightly inferred. They must be established by 'clear, unequivocal and convincing' evidence."). The strict standard of proof in these cases is justified because of the unreliability of hazy and biased recollections of stale facts and circumstances, peculiarly within the knowledge of the testifying parties. These allegations are easy to assert and difficult to rebut. Their character requires a strict standard of proof.

There are no similar circumstances of unreliability in the present case. Patents and other documentary evidence, as well as physical exhibits, were introduced at trial. The parties could have followed (although they did not) the long standing practice of procuring expert testimony on the issue of validity. Nor are there other factors which tend to strengthen the validity of the patent. *See General Tire & Rubber Co. v. Firestone Tire & Rubber Co.,* 489 F.2d 1105, 1116 (6th Cir. 1973), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2643, 41 L.Ed.2d 235 (1974) (prior judicial proceedings); *American Home Products Corp. v. Lockwood Mfg. Co.,* 483 F.2d 1120, 1125 (6th Cir. 1973), *cert. denied,* 414 U.S. 1158, 94 S.Ct. 917, 39 L.Ed.2d 110 (1974) (prior adjudication of validity); *H. K. Porter, Inc. v. Goodyear Tire & Rubber Co.,* 437 F.2d 244, 246 (6th Cir.), *cert. denied,* 404 U.S. 885, 92 S.Ct. 203, 30 L.Ed.2d 169 (1971) (Patent Office resolution of interference proceedings); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 430 F.2d 221, 225 (6th Cir. 1970) ("protracted proceedings and unusually careful scrutiny" by Patent Office); *see also Westwood Chemical, Inc. v. Molded Fiber Glass Body Co.,* 498 F.2d 1115, 1117 (6th Cir. 1974) (other similar claims held invalid in prior proceeding).

■ We are therefore of the opinion that in this case, and in the usual patent case in which validity is proved with similar evidence, a preponderance of evidence is sufficient to establish invalidity. In this regard we are in agreement with the Second Circuit. *See Rains v. Niaqua, Inc.,* 406 F.2d 275, 278 (2d Cir.), *cert. denied,* 395 U.S. 909, 89 S.Ct. 1751, 23 L.Ed.2d 222 (1969) ("a preponderance of the evidence determines the issue"); *Lorenz v. F. W. Woolworth Co.,* 305 F.2d 102, 105 (2d Cir. 1962).[1] *See also Reeves Brothers, Inc. v. U. S. Laminating Corp.,* 417 F.2d 869, 872 (2d Cir. 1969) (Kaufman, J.); *Gross v. JFD Manufacturing Co.,* 314 F.2d 196, 198 (2d Cir.), *cert. denied,* 374 U.S. 832, 83 S.Ct. 1873, 10 L.Ed.2d 1054 (1963) (Marshall, J.).

■ Because the District Court erred in applying the clear and convincing evidence standard to the facts of this case, and because invalidity is shown by a preponderance of the evidence, we reverse the District Court's determination of validity and determine that the patent is invalid as a matter of law. We regard obviousness as an ultimate conclusion of law reviewable by an appellate court. *Monroe Auto Equip. Co. v. Heckethorn Mfg. & Supply Co.,* 332 F.2d 406, 411 (6th Cir. 1964).

At the outset we note that in the present case the record supports the inference that the patent application received only a cursory examination in the Patent Office. The first patent application was allowed on the first office action by the Patent Office, but was abandoned prior to issuance by Dickstein in favor of a continuation application. The continuation was also allowed on the first office action. It does not appear that the Patent Office supplied substantive comments of any nature, in either application, concerning the patentability or unpatentability of the claims. Nor does the record disclose thorough consideration of the prior art by the Patent Office. During the trial, pertinent prior art was introduced in evidence which

was not cited by the Patent Office. *See Schnadig Corp. v. Gaines Mfg. Co., Inc.,* 494 F.2d 383, 390–91 (6th Cir. 1974); *Tee-Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193, 1196 (6th Cir. 1974).

The District Court examined each of the patents introduced by the defendants.

■ In regard to the most pertinent reference, U. S. Patent No. 3,127,615 to Aileo, the Court expressed its opinion that the Dickstein patent could be distinguished on the following basis:

In the Aileo configuration, the inwardly extending studs of the helmet are of a material capable of *cohesively engaging or fusing* with the *wall of the shell of the helmet* at the inner surface thereof—an adhesive process. The Dickstein '864 patent provides for a plurality of inwardly extending studs which are *integral with the crown portion of the helmet*—a moulding process.

The above-quoted distinction made by the District Court does not support the conclusion that there is a patentable difference. The claims require "studs integral with said crown." Studs which are either adhesively jointed or molded to the crown comprise an assembly which is "[c]omposed of constituent parts making the whole," and therefore "integral". *See* Webster's New Collegiate Dictionary (1961 ed.). Further, the difference between adhesively joining and molding appears in the specification and is not a limitation in the claims. It is well settled that the invention is measured by the claims and not by the specification. *Philips Indus. Inc. v. State Stove & Mfg. Co.,* 522 F.2d 1137 (6th Cir. 1975); *Minnesota Mining & Mfg. Co. v. Kent Indus., Inc.,* 409 F.2d 99, 101 (6th Cir. 1969); *Kaiser Indus. Corp. v. McLouth Steel Corp.,* 400 F.2d 36, 49 (6th Cir. 1968), *cert. denied,* 393 U.S. 1119, 89 S.Ct. 992, 22 L.Ed.2d 124 (1969).

The District Court further noted that Aileo and Dickstein were alike except

1. The application of the clear and convincing standard varies among the Circuits. *See Campbell, supra,* 513 F.2d at 937.

for a minor variation in the shape of the hole through which the stud was inserted:

the Dickstein '864 patent like the Aileo patent provides for a plurality of studs extending inwardly from the *crown of the helmet.* Each of these studs is so positioned and of a size to pass through one of the openings of the *harness* when the harness is snugly assembled inside the helmet in position for use.

. . . . .

Although the physical structure of the studs under both Dickstein and Aileo patents are similar in that each has a shank portion extending transversely from the inner surface of the shell of the helmet and at their inwardly projecting ends, the head portions are of a somewhat larger diametrical dimension than that the diametrical dimension of the shank portions, the Aileo patent provides that the soft flexible plastic head strap is affixed to the shank of the stud by inserting the stud into a keyhole opening provided in the head strap unlike the flexible protective harness of the Dickstein '864 patent which is secured to the inwardly extending studs by cylindrical hollow cups integral to the polyethylene harness the opening diameters of which are smaller than the larger end of the stud extending inwardly from the crown of the helmet. The tip of the stud in the Dickstein '864 patent *is enlarged* to firmly secure the cylindrical hollow cup by the application of heat either through a welding process or while the helmet is still in the mold.

Looking to the claims in the Dickstein patent, it is apparent that they do nothing more than call for "a through opening . . . of a diameter smaller than the inside diameter of said cup", with the cup "generally cylindrical" and "opening inwardly". The keyhole configuration in Aileo is arguably close to this feature, since we are not required to find exactly the identical feature, but rather look for what is obvious to one of ordinary skill in the art. However, this feature is contained in two other references. U.S. Patent No. 3,516,092 to Raschke and an unpatented helmet made by another manufacturer show the exact configuration, but with the parts reversed. The holes are in the helmet and the studs are on the liner. The District Court made the following statement with respect to these references:

The distinguishing feature . . . is that the *harness* is molded with protruding studs or posts projecting therefrom. The studs are integral to the soft, flexible polyethylene harness. The rigid hat shell is configured with holes there-through that have a diameter larger than the base of the posts of the harness, but smaller than the head of such posts so that when the head of the stud is forced through the hole of the helmet the head band firmly is retained in place within the hat.

The snap fastening or friction fit of a plastic stud with an associated opening is thus clear from these references. In addition, the defendants cited other patents and produced samples of snap fit and interference fit plastic parts which show that the concept is old per se. Therefore, the factual distinction noted by the District Court is without a legal difference. These references are both "teaching references" in the purest sense, and cure the deficiencies of Aileo. A person of ordinary skill in the art would be able to use this disclosure of the "through opening" with the otherwise complete disclosure of Aileo to produce a device as claimed.

Since each of the claim elements is present in the prior art, this case is brought within the rule recently reiterated in *Philips Industries, Inc. v. State Stove & Mfg. Co., supra,* 522 F.2d 1137, where we stated:

Given that the individual claim elements are old and disclosed in the prior art, if this device is to be patentable then there must be that "impalpable something," *Harvey v. Levine,* 322 F.2d 481, 485 (6th Cir. 1963), in the combination itself that would render

the invention unobvious. The Supreme Court decisions require that patents for the combination of old elements receive special scrutiny "with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." *Great Atlantic and Pacific Tea Co. v. Supermarket Equip. Corp.*, 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950). The concept of "synergistic result," which is "when the whole in some way exceeds the sum of its parts," has evolved to determine what constitutes the "key requirement," of patentability. *Anderson's-Black Rock v. Pavement Salvage Co., Inc.*, 396 U.S. 57, 60–61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); *Great Atlantic & Pacific Tea Co., supra,* 340 U.S. at 152, 71 S.Ct. at 130.

The conclusion of the District Court that there are any such unusual or surprising results in the Dickstein helmet is not supported by the record. As we said in *Philips Industries, supra,* 522 F.2d at 1141:

> Each element operates as well separately as it does in combination, and as in *Anderson's-Black Rock, supra,* 396 U.S. at 60, 90 S.Ct. [305,] at 307, the combination "though perhaps a matter of great convenience, did not produce a 'new or different function,' *Lincoln [Engineering] Co. v. Stewart-Warner Corp.*, 303 U.S. 545, 549, 58 S.Ct. 662, [664,], 82 L.Ed. 1008, within the test of validity of combination patents."

The Dickstein patent is therefore invalid as obvious to one of ordinary skill in the art under the provisions of 35 U.S.C. § 103.

Since the patent is invalid, it is unnecessary to reach the other issues of validity or infringement.

Reversed.

Costs are taxed against plaintiff-appellee.