**KEARNEY & TRECKER CORPORATION,**
Plaintiff-Appellant-Cross-Appellee,

v.

**CINCINNATI MILACRON INC., and Cincinnati Milacron Company, Defendants-Appellees-Cross-Appellants.**

Nos. 76–1131, 76–1132.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 10, 1977.

Decided Sept. 1, 1977.

Thomas S. Calder, John M. Kunst, Jr., Cincinnati, Ohio, Lester S. Clemons, Quarles & Brady, Thomas W. Ehrmann, Thad F. Kryshak, Victor DeMarco, Robert J. Hoerner, Milwaukee, Wis., Jones, Day, Reavis & Pogue, Cleveland, Ohio, for plaintiff-appellant-cross-appellee.

C. Jackson Cromer, Jeffrey P. Laycock, Gatch, Ritchie & Kleinmann, Cincinnati, Ohio, Wm. Marshall Lee, Robert C. Curfiss, Lee & Smith, and James P. Hume, Hume, Clement, Brinks, Willian, Olds & Cook, Ltd., Chicago, Ill., for defendants-appellees-cross-appellants.

Before CELEBREZZE and LIVELY, Circuit Judges, and SILER,* District Judge.

LIVELY, Circuit Judge.

In this patent case the district court found that Kearney & Trecker (K&T) had practiced fraud on the Patent Office and had attempted to monopolize the domestic market for "multi-function machine tools with automatic tool changers." Though the district court found that one of the patents in litigation owned by K&T was valid and infringed by Cincinnati Milacron (Milacron), it was held to be unenforceable. The other patent was found to be invalid. *Kearney & Trecker Corporation v. Cincinnati Milacron, Inc.,* 403 F.Supp. 1040 (S.D.Ohio 1975).

The present litigation began when Milacron filed a declaratory judgment action against K&T in the Southern District of Ohio on September 14, 1965 seeking a determination that two patents owned by K&T were invalid and that none of the claims of either patent had been infringed by Milacron. The patents in suit were both reissue patents—Brainard, et al., No. Re.–Re. 25,737,[1] and Morgan, No. Re. 25,812.[2] The complaint also sought a declaration that none of the reissue claims of either patent was enforceable against Milacron by reason of intervening rights.

On September 20, 1965 K&T filed suit in the Northern District of Illinois, charging Milacron with infringement of four patents owned by K&T, including the Brainard and Morgan patents. Thereafter the Illinois case was transferred to the Southern District of Ohio, and it was consolidated with the pending action of *Milacron v. K&T* by stipulation. The order of consolidation, which was entered July 22, 1966, designated K&T plaintiff and the Milacron parties as defendants. Only the two patents challenged in the original Milacron suit are involved in this appeal.

Following extensive discovery proceedings Milacron was permitted to file an amended answer and counterclaim in which it alleged that both reissue patents were "unenforceable against defendants by reason of unclean hands and inequitable conduct on the part of the plaintiff in the procurement of said patents . . . ." The charges of unclean hands and inequitable conduct related, *inter alia,* to K&T's employment of a recently retired primary examiner in the Patent Office, T. Emmert Beall, to assist in the prosecution of the Brainard and Morgan reissue applications. It was also claimed that the Morgan patent was acquired from IBM by K&T with intent to monopolize commerce in "numerically controlled machinery centers with automatic tool changers, in violation of Section 2 of the Sherman Act and Section 7 of the Clayton Act . . . ." Milacron claimed injury to its business and property as a result of K&T's alleged monopolistic acts, consisting of the expense of preparing for and defending the infringement action with respect to patents "plaintiff [K&T] knew or had reason to know were illegally obtained and were invalid."

In its reply K&T admitted employing Beall and admitted his activities in connection with the Brainard and Morgan reissues, but denied any impropriety in the relationship. It also admitted purchasing the original Morgan patent from IBM and subsequently having it reissued, but denied violating the antitrust laws. While denying the charges of unclean hands and inequitable conduct, K&T admitted that claims 36–60 of the Brainard patent No. Re.–Re. 25,737 were unenforceable. These were claims that did not appear in the original Brainard patent, but sought to broaden its scope.

The "Beall connection" appears to have first come to the attention of K&T's competitors in the course of an infringement

---

* The Honorable Eugene E. Siler, Judge, United States District Court for the Eastern and Western Districts of Kentucky, sitting by designation.

1. The original Brainard patent, No. 3,052,011, was issued September 4, 1962, reissued May 26, 1964, as Re. 25,583 and re-reissued March 2, 1965 as Re.–Re. 25,737.

2. The original Morgan patent, No. 2,901,927, was issued September 1, 1959 and reissued June 29, 1965 as Re. 25,812.

action which K&T brought against Giddings & Lewis in the Eastern District of Wisconsin. The details of Beall's employment by K&T and his involvement in obtaining the reissue Brainard and Morgan patents are set forth at length in an opinion of the Seventh Circuit, and will not be repeated here. See *Kearney & Trecker Corporation v. Giddings & Lewis, Inc.,* 452 F.2d 579 (1971), *cert. denied,* 405 U.S. 1066, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972). Writing for a divided court, then Circuit Judge John Paul Stevens found Beall's conduct "indefensible," and held that conflict of interest rendered all reissue claims of Brainard unenforceable. 452 F.2d at 594. The court wrote:

> A violation of the proscriptions against conflict of interest to obtain a broadening reissue involves the same threat to the public interest as actual fraud practiced on the Patent Office. *Id.* at 595.

Though K&T relinquished all claims obtained through the reissue and re-reissue of the Brainard patent, as it also did in the present case, the Seventh Circuit held that claims which were otherwise valid under the original application were also unenforceable. This holding was based on a finding that the invalidity of the reissue claims was not "without deceptive intention," and therefore maintenance of any action on the Brainard patent was prohibited by 35 U.S.C. § 288.[3] 452 F.2d at 596. The court also concluded that it was "manifest" that the Morgan patent had been used to further K&T's purpose "to obtain a monopoly on the broad concept" recognized by the inventor, Brainard, at an earlier date, but not protected by the original patent issued to him in 1962. 452 F.2d at 595. The parties in the *Giddings & Lewis* case stipulated as to the relevant market[4] and the court of appeals held that the requirements for a finding of violation of Section 2 of the Sherman Act had been met. The

case was remanded for a determination by the district court of whether Giddings & Lewis has sustained damages by reason of the antitrust violations.

In the present case the district court found that the Brainard claims which remained in dispute—original claims 19, 20, 21 and 24—were valid and were infringed by Malacron. Though not concerned with identical claims, the district court and court of appeals had also found the original Brainard claims valid in the *Giddings & Lewis* case. The district court in the present case further held the only original Morgan claim in suit—claim 10—was invalid as being overbroad and anticipated by Sulzer patent No. 2,363,208.

## VALIDITY OF THE PATENTS IN SUIT

The patent claims and the machines produced by the various parties are fully described in the opinion of the district court in this case, and of the Court of Appeals for the Seventh Circuit. *See* 403 F.Supp. 1049–51; 452 F.2d 581–85. We turn to consideration of the district court's findings and conclusions with respect to validity of the Brainard claims in suit and Morgan claim 10, which are challenged by the parties, since validity of patents is a matter of public importance which should always be fully explored. *Preformed Line Products Co. v. Fanner Manufacturing Co.,* 328 F.2d 265, 267 (6th Cir.), *cert. denied,* 379 U.S. 846, 85 S.Ct. 56, 13 L.Ed.2d 51 (1964).

▮ Milacron argues in its cross-appeal that the original Brainard patent is invalid for anticipation and obviousness, and for fraud on the Patent Office in withholding the most pertinent prior art during prosecution of the patent. The district court considered these arguments and concluded that the Brainard patent met the statutory tests of patentability set forth in 35 U.S.C.

---

**3.** **§ 288. Action for infringement of a patent containing an invalid claim**

Whenever, without deceptive intention, a claim of a patent is invalid, an action may be maintained for the infringement of a claim of the patent which may be valid. The patentee

shall recover no costs unless a disclaimer of the invalid claim has been entered at the Patent Office before the commencement of the suit.

**4.** The stipulated relevant market was described as "multi-function machine tools with automatic tool changers."

§§ 101, 102 and 103, and that no fraud tainted the proceedings which resulted in its issuance. Milacron next contends that the district court failed to follow controlling case law by holding that "it is not necessary to determine there is a 'synergistic effect,' whatever that is." Cases which have used the terms "synergistic effect" and "synergistic result" in referring to combination patents include *Sakraida v. AG Pro, Inc.,* 425 U.S. 273, 282, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976); *Anderson's-Black Rock, Inc. v. Pavement Salvage Co.,* 396 U.S. 57, 61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); *Philips Industries, Inc. v. State Stove & Mfg. Co.,* 522 F.2d 1137 (6th Cir. 1975), and *Dickstein v. Seventy Corporation,* 522 F.2d 1294 (6th Cir. 1975), *cert. denied,* 423 U.S. 1055, 96 S.Ct. 787, 46 L.Ed.2d 644 (1976). The synergistic test is met when a combination of elements produces an effect which is "greater than the sum of the several effects taken separately." *Anderson's-Black Rock, supra,* 396 U.S. at 61, 90 S.Ct. at 308. There must be an "impalpable something" in the combination itself which consists of previously known elements to pass the requirement of nonobviousness. *Philips Industries, supra,* 522 F.2d at 1141. Stated another way, there must be some "unusual or surprising result" from a combination of old elements. *Dickstein, supra,* 522 F.2d at 1299.

■ We conclude that the district court, while eschewing the word "synergistic," did apply the correct criteria in determining the issue of validity. The district court found that the Brainard device, which permitted preselection of the next tool while the previous tool is in use and the placing of the preselected tool into a position where it and the last used tool could be simultaneously interchanged, represented a "major technological advance." Though the mechanics of this operation were not new, the combination did produce a synergistic result. In the opinion of the district court novel features of Brainard were not obvious to one skilled in the art. The court found nothing in the prior art which anticipated the Brainard patent. Differences between the Brainard device and both patented and non-patented

machines developed by Hughes Aircraft Company, and other prior art advanced by Milacron to show anticipation, were explored in the district court opinion. Noting resemblances between a line of machines produced by Hughes and the Brainard patent, the court nevertheless found that Brainard was not derived from Hughes. The district court also held that there was no fraud on the Patent Office for failure to disclose alleged prior art, principally unprotected Hughes developments. The original Morgan patent, No. 2,901,927, constituted the nearest thing to the claims of the original Brainard patent and it was disclosed and considered by the Patent Office. We conclude that the district court did not commit error in its determination that the original Brainard patent, including claims 19, 20, 21 and 24, is valid.

■ In contending that the district court erred in holding claim 10 of the Morgan patent invalid K&T asserts that the court ignored the expertise of the Patent Office and "completely emasculates the presumption of validity," citing *Bolkcom v. Carborundum Co.,* 523 F.2d 492, 498 (6th Cir. 1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976), and *Westwood Chemical, Inc. v. Owens-Corning Fiberglas Corp.,* 445 F.2d 911, 916 (6th Cir. 1971), *cert. denied,* 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 786 (1972). A careful reading of the district court's opinion does not support this argument. The court analyzed Morgan claim 10 and the claims of Sulzer and concluded that Sulzer anticipated claim 10. While acknowledging that Morgan differed in operation from Sulzer by removing tools from storage rather than rotating the magazine so that the spindle could operate a tool still in storage, the court nevertheless concluded that Sulzer taught the basic principle of tool exchange and that Morgan was invalid for anticipation and for "overbreadth." Based on our study of the record we conclude that the holding that Morgan was anticipated by Sulzer is correct and we do not reach the question of overbreadth.

## INFRINGEMENT

■ The district court found that Milacron infringed the Brainard patent. Infringement is a question of fact and a finding on this issue may not be set aside unless it is clearly erroneous. Rule 52(a), Fed.R. Civ.P.; *Schnadig Corporation v. Gaines Manufacturing Co.*, 494 F.2d 383, 391 (6th Cir. 1974). After reviewing the testimony and exhibits the trial judge found that Brainard was infringed by a Milacron machine even when the Brainard patent was viewed in its most limited form in light of prior art. This finding is supported by substantial evidence and is not clearly erroneous. Since Morgan was held invalid, the district court did not reach the issue of its alleged infringement.

## ENFORCEABILITY

K&T points out that it withdrew its earlier contention that the claims of the Brainard reissue patents are enforceable and that the district court found that the original claims of the Brainard patent "sprang from a background free of fraud." It argues that the Seventh Circuit reached an unprecedented result and misapplied 35 U.S.C. § 288 in *Giddings & Lewis, supra.* Reduced to its essence, K&T's contention is that the employment of Beall did not violate Patent Office rules or any statute and that his activities neither helped K&T nor injured Milacron or the general public. The activities of Beall, it maintains, were not equivalent to transferring allegiance, and amounted to an appearance of impropriety at the most. Since he was hired long after the original Brainard patent issue, K&T argues that the original patent was unaffected by the subsequent Beall relationship.

■ In *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945), the Supreme Court held that where an applicant for a patent suppressed facts which should have been brought to the attention of the Patent Office, the "door of a court of equity" was closed to him when he sought to enforce his tainted patent. This result of the "clean hands" doctrine follows regardless of the conduct of an alleged infringer. Id. at 814, 65 S.Ct. 993. Thus, though Milacron has been found guilty of infringement, its conduct is not a factor to be weighed in determining the enforceability of K&T's patents. This court made clear in *Kolene Corporation v. Motor City Metal Treating, Inc.*, 440 F.2d 77, 83 (6th Cir.), *cert. denied*, 404 U.S. 886, 92 S.Ct. 203, 30 L.Ed.2d 169 (1971), that mere technical fraud is not sufficient to deny enforceability, but that " 'scienter' or fraudulent intent . . . is an integral part of the defense of fraud." Furthermore, we have held that "[f]raud or unclean hands are not to be lightly inferred. They must be established by 'clear, unequivocal and convincing' evidence." *Schnadig Corporation v. Gaines Mfg. Co., supra,* 494 F.2d at 392. There was such evidence in the record before the district court, and its finding of fraud and unclean hands is not clearly erroneous. A further requirement for application of the clean hands doctrine is that the wrongful conduct be directly related to the matter in litigation. *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293 (1933). The present infringement action satisfies this requirement.

■ K&T argues that the district court's decree of unenforceability merely punishes it without serving the public interest, and contends that it has purged itself of any wrongdoing. This argument fails to recognize the difference between misuse of a patent acquired without wrongdoing and fraud and the procurement of a patent. Ordinarily where a validly acquired patent has been misused the right to enforce it may be denied temporarily and then reinstated when the patent owner can show that it has discontinued its illegal practices and that the consequences of the wrongdoing have been "fully dissipated" in view of the trial court. *Preformed Line Products Co. v. Fanner Mfg. Co., supra,* 328 F.2d at 278–79. As a primary examiner Beall was involved with the original Brainard patent. The purpose of K&T as found by the district court was to broaden the scope of the

original Brainard patent by means of the reissue applications. The inequitable conduct of K&T in using Beall in connection with the reissue proceedings, as outlined in *Giddings & Lewis, supra,* involved deceptive intention and tainted the Brainard patent to the same degree as if the original patent had been procured by fraud on the Patent Office, and the effects of this conduct have not been dissipated. We agree with the Seventh Circuit's construction of 35 U.S.C. § 288, *Giddings & Lewis, supra,* 452 F.2d at 596, and hold that K&T's attempts at purgation are ineffective. Since "deceptive intention" was involved, disclaimer of the reissue claims pursuant to 35 U.S.C. § 253 [5] was not available as a means of preserving enforceability of the remaining claims.

■■■ We also affirm the district court's holding that Morgan reissue claims 21–31 are unenforceable. The district court found that K&T *knew* that the original Morgan patent was invalid, yet urged its validity in seeking a reissue patent. This finding was based on the fact that several attorneys, and Beall, advised K&T that Morgan was invalid in their opinion. Nevertheless, at least one attorney advised K&T that Morgan was valid, and IBM, which then owned the Morgan patent, contended it was valid and granted licenses pursuant to it. The Sulzer patent was disclosed by K&T when it sought the Morgan reissue, and there is no evidence that other relevant prior art was withheld. Though we do not agree that K&T practiced fraud

on the Patent Office by asserting in reissue proceedings the validity of a patent on which it had received conflicting views of validity, nevertheless the Morgan reissue claims are unenforceable for another reason. While it is true that Beall had no connection with the original Morgan patent during his tenure at the Patent Office and the reissue application was made more than two years after his retirement, the fact remains that the illegal purposes of K&T were served by the Morgan reissue proceedings. This connection was described by the Seventh Circuit in its finding that it was "manifest that the use of Morgan was ancillary to plaintiff's purpose to obtain a monopoly on the broad concept recognized by Brainard in 1956, but not protected by the patent issued in 1962." *Giddings & Lewis, supra,* 452 F.2d at 595. Therefore the Morgan reissue claims are unenforceable.

## ANTITRUST ISSUES

■■■ Both the Seventh Circuit in *Giddings & Lewis* and the district court in the present case relied principally upon the decision in *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), in holding that K&T violated Section 2 of the Sherman Act. *Walker Process* permits recovery of treble damages under Section 4 of the Clayton Act [6] by a party who can show injury to its business or property resulting from the fraudulent procurement of a pat-

---

**5. § 253. Disclaimer**

    Whenever, without any deceptive intention, a claim of a patent is invalid the remaining claims shall not thereby be rendered invalid. A patentee, whether of the whole or any sectional interest therein, may, on payment of the fee required by law, make disclaimer of any complete claim, stating therein the extent of his interest in such patent. Such disclaimer shall be in writing, and recorded in the Patent Office; and it shall thereafter be considered as part of the original patent to the extent of the interest possessed by the disclaimant and by those claiming under him.

    In like manner any patentee or applicant may disclaim or dedicate to the public the entire

term, or any terminal part of the term, of the patent granted or to be granted.

**6.** 15 U.S.C. § 15 (Section 4 of the Clayton Act) provides:

    **§ 15. Suits by persons injured; amount of recovery**

    Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

ent coupled with violations of Section 2 of the Sherman Act.[7]

K&T's position on this issue was summarized in its reply brief as follows:

> The inequitable conduct found to exist by reason of the conflict of interest, because it was not a procuring cause of the patents, is not the type of intentional fraud which should trigger the application of the doctrine of *Walker Process.* The reissuance of the Morgan patent with claim 10 unchanged is not intentional fraud as in *Walker Process* since there was no misrepresentation, concealment of material facts, or false oath.

In effect K&T argues that *Walker Process* applies only to misconduct which consists of intentional violation of specific statutes, regulations or rules of the Patent Office and that the existence of a conflict of interest in patent proceedings does not justify the extreme sanctions of declaring the patent void and awarding treble damages. This is a repeat of its contention with respect to enforceability—that its conduct was not equivalent to fraud in the procurement of a patent—and our holding on that issue forecloses the argument.

■ K&T further contends that Milacron failed to carry its burden of establishing the relevant market and that the district court made no findings, but merely adopted the Seventh Circuit's determination of the relevant market in *Giddings & Lewis,* which was based on a stipulation. In *Walker Process, supra,* 382 U.S. at 177, 86 S.Ct. at 350, the Supreme Court wrote:

> To establish monopolization or attempt to monopolize a part of trade or commerce under § 2 of the Sherman Act, it would then be necessary to appraise the exclusionary power of the illegal patent claim in terms of the relevant market for

the product involved. Without a definition of that market there is no way to measure Food Machinery's ability to lessen or destroy competition.

Though the district court did find the relevant market to be the same as that stipulated in *Giddings & Lewis,* it did not do so by merely adopting the Seventh Circuit's finding. Witnesses testified directly on this issue on the present case and there is evidence which supports the determination of the district court. It was not error to reject K&T's contention that the relevant market is the market for all multi-function machine tools, whether equipped with automatic tool changers or not. While the broader market of multi-function machine tools is recognized in the industry, the proof in this case clearly supports the finding that a narrower market exists for such machinery equipped with automatic tool changers.

■ It is also contended by K&T that Milacron failed to show a "dangerous probability"[8] that K&T would achieve a monopoly or that it had a specific intent to monopolize. Section 2 of the Sherman Act prohibits both monopolization and attempts to monopolize. Ownership of a patent has been held to establish at least *prima facie* evidence of market control. *See Standard Oil Co. v. United States,* 337 U.S. 293, 307, 69 S.Ct. 1051, 93 L.Ed. 1371 (1949). Even so, *Walker Process* requires an appraisal of the exclusionary power of an illegal patent claim in terms of the relevant market. The district court made such an appraisal and made specific findings that K&T had the capacity for a serious attempt to monopolize the relevant market and that it could not "deny that it intended to acquire the power to exclude competition from the portion of the market described in the broad claims of the twice reissued Brainard pat-

---

7. 15 U.S.C. § 2 (Section 2 of the Sherman Act) provides:

> **§ 2. Monopolizing trade a misdemeanor; penalty**
>
> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign

nations, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding fifty thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court.

8. *See Swift & Co. v. United States,* 196 U.S. 375, 396, 25 S.Ct. 276, 49 L.Ed. 518 (1905).

ent . . . ." In light of the evidence it cannot be said that these findings are clearly erroneous.

■ The final issue by K&T's appeal relates to the damages awarded for antitrust violation. Milacron did not prove direct market place damages resulting from K&T's anticompetitive acts. However, the district court found that Milacron was placed in the position of being required to choose from among three alternatives— cease competing with K&T, take a license from K&T, or defend an infringement action. Milacron chose to defend the action brought by K&T, and in the course of these proceedings it established the existence of fraud to the satisfaction of the district court. This in itself met the requirement that there be a causal connection between the infringement suit and the antitrust activities and led the district court to conclude, as a matter of law, that Milacron was entitled to recover the costs and expenses of defending the infringement suit as damages for the antitrust violations.

Though this court has not decided the question, other courts have held that antitrust damages may include attorney fees and costs of defending an infringement suit where the real purpose of the action is to further an existing monopoly and eliminate the alleged infringer-defendant as a competitor. *E. g., Kobe v. Dempsey Pump Co.,* 198 F.2d 416 (10th Cir.), *cert. denied,* 344 U.S. 837, 73 S.Ct. 46, 97 L.Ed. 651 (1952). In *Dairy Foods, Inc. v. Dairy Maid Products Coop.,* 297 F.2d 805 (7th Cir. 1961), the court held that a pleading which charged that an alleged antitrust violator had put a competitor in the position of being required to choose among alternative responses, each of which had an adverse economic impact, sufficiently set forth an injury to business or property. The court further held that when such an injury is proven the costs and expenses of defending an infringement suit may be recovered threefold. *Id.* at 809. Such damages were disallowed in *American Infra-Red Radiant Co. v. Lambert Industries, Inc.,* 360 F.2d 977 (8th Cir.), *cert. denied,* 385 U.S. 920, 87 S.Ct. 233, 17

L.Ed.2d 144 (1966), which is readily distinguishable. *Lambert* did not involve fraud on the Patent Office. Rather, the district court found that the only patent misuse consisted of contractual arrangements and that there was specifically no misuse involved in bringing the infringement suit. Thus there was no causal connection between the infringement action and the antitrust activities.

■ The most serious objection to the allowance of the costs and expenses of defending an infringement suit as antitrust damages was stated in *Straus v. Victor Talking Machine Co.,* 297 F. 791, 799 (2d Cir. 1924), as follows:

> . . . it would be a negation of the principle and right of free access to the courts to hold that the submission of rights to judicial determination involved a dangerous gamble which might subject the loser to heavy damage.

See also *Malta Manufacturing Co. v. Osten,* 215 F.Supp. 114, 123 (E.D.Mich.1963). We agree that no barriers should be erected which prevent free access to the courts by one who believes in good faith that his valid patent is being infringed. However, one who has established or is attempting to establish an illegal monopoly by fraud on the Patent Office or misuse of a patent should not be permitted to further this goal by means of an infringement suit. When the antitrust violations are causally connected to the infringement action it is permissible to include the expenses of defending that action in the award of damages.

■ K&T also complains of the district court's award of attorney fees based on a finding that this is an "exceptional" case under 35 U.S.C. § 285, but we conclude that there was no abuse of discretion in this determination.

## THE CROSS–APPEAL

■ Milacron contends that K&T did not cease its efforts to monopolize the relevant market when it abandoned its Brainard reissue claims. Milacron also argues that K&T violated § 7 of the Clayton Act in

acquiring the Morgan patent. The district court specifically found, for reasons stated in its opinion, that the purchase of Morgan from IBM was free of antitrust taint and that the only Sherman Act violation involving Morgan consisted of K&T's abuse of the reissue privilege. The evidence fully supports this conclusion which is consistent with our previously expressed views on the purchase of the Morgan patent from IBM. The district court denied treble damages for costs and expenses of this action incurred after May 1969 and cut off the award of costs as of that time. In May 1969 K&T abandoned all reissue claims directly involved in its fraudulent acts, and the district court did not abuse its discretion in adopting that time as the cut-off point for treble damages and costs.

The judgment of the district court is affirmed on appeal and cross-appeal. Each party will pay its own costs on appeal.