**REYNOLDS METALS COMPANY,**
**Plaintiff-Appellant,**

v.

**ACORN BUILDING COMPONENTS,**
**INC., Defendant-Appellee.**

No. 75–2182.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 19, 1976.

Decided Jan. 18, 1977.

James L. Dooley, Sherman O. Parrett, Washington, D. C., Robert L. Boynton, Birmingham, Mich., John F. C. Glenn, Robert C. Lyne, Jr., Reynolds Metals Co., Richmond, Va., for plaintiff-appellant.

Bernard J. Cantor, Cullen, Settle, Sloman & Cantor, Jerold I. Schneider, Detroit, Mich., for defendant-appellee.

Before WEICK, CELEBREZZE and ENGEL, Circuit Judges.

WEICK, Circuit Judge.

This action was brought in the District Court by Reynolds Metals Company (Reynolds) against Acorn Building Components, Inc. (Acorn) for infringement of Nilsen Patent U.S. Patent No. 3,204,324 entitled "Method For Making An Insulated Frame Construction," of which patent Reynolds was the assignee. Acorn denied infringement and counterclaimed, *inter alia*, for declaratory judgment of invalidity. The District Court held that the patent was invalid for (1) lack of invention, (2) obviousness under 35 U.S.C. § 103, and (3) failure to comply with the specificity requirements of 35 U.S.C. § 112. The Court further held that if the patent were valid, it had been infringed by Acorn. The opinion of the District Court is published at 185 U.S.P.Q. 30 (1975). Reynolds appealed. We affirm, holding the patent invalid, and therefore we do not reach the infringement issue.

The Nilsen patent claims "a method for forming an insulating construction for use

in window and curtain wall systems."[1] The Nilsen claims 1, 3 and 4 describe a method which involves: (a) starting with a one-piece extruded metal structure with two U-shaped channels opposite each other, with at least one metal projection contained in each U-shaped channel; (b) filling the channels and the area therebetween with an insulating spacer by flowing therein a liquid resinous composition; (c) solidifying the composition; and then (d) cutting away the bottom section which connects the two U-shaped channels in order to destroy the thermal conductivity between the two members. This forms a metal-plastic-metal construction, or joint, in which the plastic spacer insulates against the transfer of heat between the metal channel parts.

One of the limitations of a metal frame utilized for windows and wall panels is that it permits substantial heat loss from the interior of the building, as well as moisture condensation upon the interior frame. The insulating construction described in the Nilsen patent minimizes this problem by creating a thermal barrier which prevents the flow of heat or cold from the inside to the outside, or vice versa, of a window frame.

In 1962 the Soule Steel Company was awarded a contract to supply aluminum framed insulated curtain wall and window elements to be used in the construction of a building in Fairbanks, Alaska. The building architect's plans specified that the insulating frames to be used should be those marketed by the Marmet Corporation and manufactured under the Doede Patent No. 3,093,217. Fred Nilsen, a project engineer with Soule, specified that instead of using two separate channels as described in the Marmet frame, a single section should be used in which the top portion should be open and the bottom closed. An epoxy solution should then be poured into the channel and when it solidified the bottom portion should be cut away.

On December 10, 1962 Nilsen filed a patent application for this method. In the first official action the Examiner cited eight patents, or "references of interest", against the Nilsen patent application. These were Luth Patent No. 2,366,274, Kunkel Patent No. 2,781,111, Bernardoni et al. Patent No. 2,835,360, Cole Patent No. 3,037,589, Smith Patent No. 3,070,474, Doede Patent No. 3,093,217, Briggs Patent No.

---

1. The claims of the Nilsen Patent involved in this litigation are as follows:

    1. A method for forming an insulating construction for use in window and curtain wall systems comprising:

    (a) providing first and second metal strips disposed in generally parallel spaced relation having spaced apart first and second generally U-shaped channels on said respective strips formed with metal sides generally normal to said strips, at least one projection inside each channel on a side thereof, and wherein at least one metal side of each channel is positioned in opposed relation and joined together with a metal section therebetween;

    (b) filling the interior of said channels and the area therebetween bounded by said metal section with an insulating spacer by flowing a resinous insulating composition therein;

    (c) curing said resinous insulating composition to harden the same;

    (d) and then removing said metal section joining said channels.

    2. Claim (2) is not involved here.

    3. A method in accordance with claim 1 wherein said metal strips and channels and channel joining section is a unitary extruded aluminum combination.

    4. A method for making an insulating construction for use in window and curtain wall systems comprising:

    (a) providing a pair of elongated structural members of relatively high thermal conductivity positioned in adjacent spaced-apart relation, wherein a mutually facing portion of each member defines a concavity, and the concavities together define a channel therebetween wherein at least one projection extends from the surface interiorly of each concavity, and wherein the structural members include a portion spanning the space, therebetween for rigidly joining the two structural members, said spanning portion defining part of the boundary of said channel in cooperation with the surfaces of said concavities;

    (b) filling said channel with a solidifiable spacer forming material of relatively low thermal conductivity, and thereafter solidifying said spacer forming material, and thereby embedding said projections in the spacer material;

    (c) and then removing said spanning portion joining the two structural members to destroy thermal conductivity between the two members.

3,114,179, and Swiss Patent No. 356,265. The Examiner cited also four other references to show classification. Two of these patents, which related to the method of forming the structural component, were the Kopplinger Patent No. 1,552,748, and the McCormack Patent No. 2,382,245. The Examiner noted that the patents of interest cited were the result of a cursory search. In the second official action the application was rejected on the ground that the patent failed to comply with 35 U.S.C. § 112. The Examiner also rejected the patent on the ground that it defined:

> . . . no invention over McCormack in view of Kunkel who discloses the forming of concavities as broadly required in the claim. It would be obvious to one of ordinary skill in the art to utilize said forming of Kunkel in the method of McCormack.

However, after further proceedings the Nilsen patent was finally approved on September 7, 1965.

In 1969 the Nilsen patent was assigned to Reynolds. Reynolds entered into a program with Acorn to supply Acorn with aluminum extrusions with plastic-filled channels made under the Nilsen method. The extrusions were used by Acorn in its manufacture of patio doors. Acorn, after dissatisfaction with the filling material and delays in delivery, ceased purchasing extrusions from Reynolds and began using a method which the District Court found was similar to that described in the Nilsen patent claims.

## I

The District Court determined the prior art to be "comprised of numerous patents describing insulating constructions utilized in windows and curtain wall systems." The prior art considered by the Court included the following patents:

(1) *Kunkel Patent No. 2,781,111 (1957)*

This patent describes an insulating metal window construction which uses a one-piece metal extrusion with a U-shaped channel. A solid, but resilient, plastic spacing element is placed into or over the channel and is connected to the metal by adhesive and mechanical interlock. The bottom portion of the U-shaped channel is then cut away to separate the metal and thereby to form an insulating construction. "One object of the invention is to provide a metal window which obviates or reduces to a minimum the conduction of cold or heat through the same." (Patent specification App. 262)

(2) *Owen Patent No. 2,125,397 (1938)*

This patent was not considered by the Patent Office during the processing of the Nilsen patent; rather, it was one of many of the prior art patents cited by the appellee Acorn. This patent discloses an insulating frame to be used in constructing double structures. A liquid or putty-like synthetic resin is flowed into the channel formed by the base flanges of two L-shaped metal strips. The insulating material then hardens and is fastened to projections formed in the metal channel by adhesive and mechanical interlock. The resinous material provides insulation between the two metal strips, but it does not serve as a "thermal break" in the sense that it does not insulate the indoor atmosphere from the outdoor atmosphere; rather, it insulates the interior elements of the construction from each other.

(3) *Briggs Patent No. 3,114,179 (1963)*

This patent discloses an insulated metal frame to be used in constructing heat insulated double-panelled closures such as windows, doors, and the like. Briggs describes a structure having the spaced apart U-shaped channels with metal projections contained in each channel. A plastic insulating strip is inserted between the channels and interlocked to the channels by the metal projections to form an insulating barrier.

(4) *Kessler Patent No. 2,654,920 (1953)*

This patent discloses a thermal insulating construction for use in a window system. The structure has spaced apart U-shaped channels. An insulating spacer is inserted

in the channels and the metal projections in each channel interlock the spacer to the channels. An object of the invention is to insulate the members "by interposing a material of low heat conductivity, breaking the metallic continuity of the metal members between the exterior and interior surfaces of the window closure and thereby substantially reducing the heat transfer." (Patent specification App. 249)

**(5) Doede Patent No. 3,093,217 (1963)**

This patent discloses an insulating construction for use in a window or curtain wall system, having the two metal channels with projections on the channel walls. A rigid, thermo-setting plastic insulating spacer is inserted into the channel and secured by an adhesive, and interlocked to the channels by the projections.

Although the Nilsen patent did not specifically disclose that it produced a "thermal break" construction, the record is clear that it did, in fact, produce a "thermal break". As defined by the District Court a thermal break is—

> . . . a frame construction with a non-conductive material completely separating conductive materials whereby a thermal barrier is created preventing the flow of heat or cold from the outside to the inside of a window frame.

The District Court found that the thermal break resulting from the application of the Nilsen method is not new. Thermal break constructions were described by the Doede, Kunkel, Briggs, and Kessler patents.

The District Court also made other findings relative to the prior art. The Court found that the use of electrical and thermal insulating materials such as liquid urethane and polyurethane, commonly known as potting compounds or caulks, was well known prior to 1962. The Court also found that one of ordinary skill in the art of making insulating constructions for use in windows and curtain wall systems, would have been expected to know that:

1— Liquid plastic resins could be utilized in constructing insulating frames;

2— Liquid resins were commonly used in building insulating constructions and that such plastics were readily available;

3— A one-piece extruded channel is easier to handle than a two-piece channel, and that in order to fill such channel with liquid the bottom portion of the channel would have to be closed. After the channel was filled it would be necessary to remove the bottom portion in order to form a thermal break;

4— A liquid plastic would have to solidify or harden and should have good adhesion to metal.

We hold that the District Court's findings of fact are supported by substantial evidence in the record and are not clearly erroneous.

## II

There are three essential elements of patent validity: novelty, utility and nonobviousness, which are codified in 35 U.S.C. §§ 101–103. *Bolkcom v. Carborundum,* 523 F.2d 492, 498 (6th Cir. 1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976); *Westwood Chem. Inc. v. Owens-Corning Fiberglass Corp.,* 445 F.2d 911 (6th Cir. 1971), *cert. denied,* 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 786 (1972).

The third element, nonobviousness, is actually the statutory equivalent of the judicial test of "invention" (*McClain v. Ortmayer,* 141 U.S. 419, 427, 12 S.Ct. 76, 35 L.Ed. 800 (1891)), as incorporated by Congress in 1952 in 35 U.S.C. § 103. *Dann v. Johnston,* 425 U.S. 219, 225, 96 S.Ct. 1393, 47 L.Ed.2d 692 (1976). We are concerned here with the element of nonobviousness.

The District Court found that the Nilsen patent claims were invalid because they were merely a combination of elements well known in the prior art, and that the function performed by the Nilsen method was the same as that disclosed in the prior art. The Court further found:

> [W]hat is claimed by the Nilsen Patent claims 1, 3, and 4 would have been obvious to those having ordinary skill in the

art to which the patent pertains at the time the invention was made.

It is the finding of this Court that the claims of the Nilsen Patent at issue here are invalid as being obvious within the meaning of 35 U.S.C. § 103.

We agree.

■■■ We first note that every patent issued by the Patent Office carries with it a statutory presumption of validity under 35 U.S.C. § 282. *Bolkcom v. Carborundum, supra,* at 498; *Dunlop Co. v. Kelsey-Hayes Co.,* 484 F.2d 407, 413 (6th Cir. 1973), *cert. denied,* 415 U.S. 917, 94 S.Ct. 1414, 39 L.Ed.2d 471 (1974); *Goodrich-Gulf Chem., Inc. v. Phillips Petroleum Co.,* 376 F.2d 1015 (6th Cir. 1967); *Monroe Auto Equip. Co. v. Heckethorn Mfg. & Supply Co.,* 332 F.2d 406, 412 (6th Cir.), *cert. denied,* 379 U.S. 888, 85 S.Ct. 160, 13 L.Ed.2d 93 (1964). We recognize that the presumption of validity "has no independent evidentiary value, however, but only serves to place the burden of proof on a party who asserts invalidity." *Sperberg v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 713 (6th Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 303 (1975).

■■■ However, where pertinent prior art was not considered by the Patent Office this presumption is weakened. *Bolkcom v. Carborundum, supra,* at 498; *Schnadig Corp. v. Gaines Mfg. Co.,* 494 F.2d 383, 390 (6th Cir. 1974), and cases cited therein; *Tee-Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193, 1196 (6th Cir. 1974); *Dunlop Co. v. Kelsey-Hayes Co., supra,* at 413.

The District Court determined that the Owen patent, which was not considered by the Patent Office, was pertinent prior art and it thereby dissipated the statutory presumption of validity. The Nilsen patent discloses a method of flowing a resinous material into the channel to form an insulating spacer. Apparently none of the patents cited by the Examiner involved such a flowing process. The Owen patent, however, which was cited by Acorn, did teach such a flowing process, and although it did not teach a thermal break it was clearly pertinent prior art.

Reynolds contends that the Owen patent is no more pertinent than the Smith patent, which was cited by the Examiner during prosecution of the Nilsen patent, because neither of the patents discloses an insulating spacer which produces a thermal break; rather, the spacers in both patents only insulate the interior elements of the structure from each other. However, an examination of the Smith patent, entitled "Bonded Glass Surfaces and Method Therefor," reveals that it is not for flowing insulating plastic into a window frame or channel, but rather it is for bonding together pieces of glass by a bonding material, albeit with low thermal conductivity. We find that the Owen and Smith patents are sufficiently different so that the Owen patent remains applicable and pertinent prior art, which weakens the presumption of validity of the Nilsen patent. Moreover, our consideration of the Owen patent as a pertinent prior art is reinforced by the fact that the patents originally cited against the Nilsen patent in the first official action were the result of only a cursory examination by the Examiner.

■■■ The ultimate determination of patent validity and obviousness is one of law. *Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976); *Great A&P Tea Co. v. Supermarket Corp.,* 340 U.S. 147, 155, 71 S.Ct. 127, 95 L.Ed. 162 (1950). Nonetheless, as the District Court recognized, the familiar inquiry into obviousness as required in *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), necessarily entails several basic factual examinations:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. (*Id.* at 17, 86 S.Ct. at 694)

In *Kolene Corp. v. Motor City Metal Treating, Inc.,* 440 F.2d 77, 81 (6th Cir.),

*cert. denied,* 404 U.S. 886, 92 S.Ct. 205, 30 L.Ed.2d 169 (1971), this Court stated that when the District Court makes the inquiries called for in *Graham v. John Deere Co., supra,* it makes findings of fact which are binding on appeal unless the findings are clearly erroneous.

■ This Court may disagree with the ultimate legal determination of obviousness based on the established findings of fact. *See National Rolled Thread Die Co. v. E. W. Ferry Screw Prods., Inc.,* 541 F.2d 593 (6th Cir. 1976); *Philips Indus., Inc. v. State Stove Mfg. Co.,* 522 F.2d 1137, 1139 (6th Cir. 1975).

■ Reynolds concedes "the fact that none of the claims recite any step which cannot be found somewhere in the prior art—the fact that every claimed step is old." This Court recognizes that even though each claimed step was known in the prior art, the issue is whether the combination of steps produces a "new or different function". *Lincoln Eng'r. Co. v. Stewart-Warner Corp.,* 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008 (1938). As this Court observed in *Philips, supra,* at 1141:

> Given that the individual claim elements are old and disclosed in the prior art, if this device is to be patentable then there must be that "impalpable something," *Harvey v. Levine,* 322 F.2d 481, 485 (6th Cir. 1963), in the combination itself that would render the invention unobvious. The Supreme court decisions require that patents for the combination of old elements receive special scrutiny "with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." *Great Atlantic and Pacific Tea Co. v. Supermarket Equip. Corp.,* 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950). The concept of "synergistic result," which is "when the whole in some way exceeds the sum of its parts," has evolved to determine what constitutes the "key requirement," of patentability. *Anderson's-Black Rock v. Pavement Salvage Co., Inc.,* 396 U.S. 57, 60–61, 90 S.Ct. 305, 24

L.Ed.2d 258 (1969); *Great Atlantic & Pacific Tea Co., supra,* 340 U.S. at 152, 71 S.Ct. at 130.

The technique of using a one-piece metal structure to provide dimensional stability was described by the Kunkel patent. The method of cutting away the bottom section which connects the U-shaped channels was also described by the Kunkel patent. The use of the spaced-apart U-shaped channels with metal projections to interlock with the insulating spacer was described by the Briggs and Kessler patents. The process of flowing a liquid plastic resin was described in several patents in different ways. The Doede patent describes a process of flowing a liquid plastic resin into the opposed metal channels before inserting the solid plastic spacer, so that the resin solidified and adhesively bonded to both the metal and the solid plastic spacer. The Owen patent describes a process of flowing a liquid or putty-like insulating spacer to fill the channel formed by the base flanges of the two metal strips.

The record also indicates that the process of pouring a liquid resin into a form and then cutting away part of it, was used for the analogous purpose of making insulating constructions in patented electrical devices. The techniques and principles involved were essentially the same as those used in the Nilsen patent.

We find that the Nilsen patent does not disclose a method of producing a thermal break which can be characterized as "synergistic". As the Supreme Court recently stated in *Sakraida v. Ag Pro, Inc., supra,* 425 U.S. at 282, 96 S.Ct. at 1537:

> Rather, this patent simply arranges old elements with each performing the same function it had been known to perform, although perhaps producing a more striking result than in previous combinations. Such combinations are not patentable under standards appropriate for a combination patent.

This Court recognizes that there are secondary considerations that have some bearing on the issue of validity. The Supreme

Court, in *Graham v. John Deere Co., supra,* 383 U.S. at 17–18, 86 S.Ct. at 694, stated:

> Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc. might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

The District Court found that the Nilsen patent "has enjoyed a moderate degree of commercial success in recent years." However, commercial success alone will not render a patent valid. As this Court noted in *Philips Indus., Inc. v. State Stove Mfg. Co., supra,* at 1142:

> [E]ven though "the combination filled a long felt want and has enjoyed commercial success . . . those matters 'without invention will not make patentability.' " 396 U.S. at 61, 90 S.Ct. at 308. Regardless of the success of this venture, "more than that is needed for invention." *Id.* at 63, 90 S.Ct. at 309. See *Monroe Auto Equip. Co. v. Heckethorn Mfg. & Supply Co.,* 332 F.2d 406, 414 (6th Cir.), cert. denied, 379 U.S. 888, 85 S.Ct. 160, 13 L.Ed.2d 93 (1964).

Reynolds also contends that the Nilsen patent resulted in efficiencies and savings because of the advantages of using a liquid spacer instead of a plurality of solid elements. We do not dispute that the use of a liquid spacer was an improvement over the use of a solid spacer, but as the Supreme Court held in *Sakraida v. Ag Pro, Inc., supra,* 425 U.S. at 282–83, 96 S.Ct. at 1537:

> Though doubtless a matter of great convenience, producing a desired result in a cheaper and faster way, and enjoying commercial success, Dairy Establishment "did not produce a 'new or different function' . . . within the test of validity of combination patents." *Anderson's-Black Rock v. Pavement Co., supra,* 396 U.S. at 60, 90 S.Ct. at 308, 24 L.Ed.2d at 261. These desirable benefits "without invention will not make patentability."

*Great A&P Tea Co. v. Supermarket, etc. Co.,* 340 U.S. at 153, 71 S.Ct. at 130, 95 L.Ed. at 167. *See Dann v. Johnston, ante,* [425 U.S.] at 230 n. 4, 96 S.Ct. at 1399.

Reynolds further maintains that the District Court erred in relying on the testimony of two of Acorn's witnesses, Dr. Kurt Frisch and Jack Hutt. Dr. Frisch, a professor of polymer chemistry and an academic expert on liquid plastics, and Jack Hutt, also a plastics expert, both had extensive experience in the use of liquid plastics in making "potting compounds" employed in electrical devices to form electrical insulations. Reynolds maintains, however, that these plastics experts were not competent to testify as to what would have been known to a person having ordinary skill in the art of constructing thermal insulating frames for use in windows and curtain wall systems. We disagree.

35 U.S.C. § 103 provides that the subject matter sought to be patented must not have been obvious "at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." The District Court did rely on the testimony of the two witnesses, but apparently did so only to the extent that the Court concluded that the testimony revealed that the use of liquid plastics in the making of electrical insulating constructions is analogous to the use of liquid plastics in constructing thermal insulators. The Court also concluded from the witnesses' testimony that the use of potting compounds as insulating materials was well known prior to 1962.

Dr. Frisch and Mr. Hutt were not the only witnesses upon whose testimony the District Court based its finding of obviousness; rather, the Court based its conclusions also upon the testimony of various other witnesses and documentary evidence, and this Court will not attempt to judge the credibility of the witnesses absent a clear abuse of the District Court's discretion. Moreover, in this case the evidence

supporting obviousness was not so unreliable as to require this Court to apply the strict standard of proving obviousness by clear and convincing evidence. *See Campbell v. Spectrum Automation Co.,* 513 F.2d 932 (6th Cir. 1975). Rather, in this case a preponderance of the evidence is sufficient to establish invalidity. *Dickstein v. Seventy Corp.,* 522 F.2d 1294, 1297 (6th Cir. 1975), *cert. denied,* 423 U.S. 1055, 96 S.Ct. 787, 46 L.Ed.2d 644 (1976).

Although our agreement with the District Court's finding of obviousness alone is sufficient to affirm its holding of invalidity, we note further that there are other serious shortcomings with regard to the Nilsen patent, namely, its lack of specificity.

35 U.S.C. § 112 provides as follows:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The District Court found that although the patent disclosed that the insulating spacer was made from a resinous material, it did not set forth any specific resinous material among the many that exist, some of which are not suitable. Therefore, those persons who were skilled in the art of making insulated window frames were unable to practice the method without additional information. Even those skilled in the plastic art would have been unable to practice the method without experimentation to determine the most suitable material. With regard to the "best mode" clause of 35 U.S.C. § 112 the District Court found:

Nilsen knew of a particular resinous material, namely, an epoxy called "Epotuf" plus a fiber additive which he used successfully. However, the patent does not disclose the use of said material. Thus, the "best mode" which, in fact, was the only mode contemplated by Nilsen,

was not set forth in the patent as required by 35 U.S.C. § 112.

We agree. The record indicates that Nilsen in practice used Epotuf to fill extrusions in accordance with his method, and to improve the epoxy's capacity to endure the shocks of repeated impacts he added strands of fiber glass. While the specifications of the Nilsen patent did disclose that the insulating spacer should include inorganic fillers and/or fibers it was not mentioned in the claims, and even the specifications failed to disclose Epotuf with fiber glass as the resinous material to be used. The patent's limited description leaves a person skilled in the art either to guess at what Nilsen contemplated as the best mode for carrying out his invention, or to engage in extensive experiments in an effort to determine it.

Reynolds also contended that the District Court made erroneous holdings with regard to the exclusion of deposition testimony of two witnesses who testified at trial, and the scope of the cross-examination of one of Reynolds' engineers. We find these contentions to be without merit and we hold that the Court's rulings were not prejudicial.

■ The Nilsen patent is invalid as obvious to one of ordinary skill in the art under the provisions of 35 U.S.C. § 103, and for failure to comply with the specificity requirements of 35 U.S.C. § 112. The patent is invalid and therefore it is not necessary to reach any other issues, including the issue of infringement.

Affirmed.