AMERICAN SEATING COMPANY,
Plaintiff-Appellant Cross-Appellee,

v.

NATIONAL SEATING COMPANY, Defendant-Appellee Cross-Appellant.

Nos. 76–2625, 76–2626.

United States Court of Appeals,
Sixth Circuit.

Argued June 19, 1978.
Decided Sept. 15, 1978.

Lloyd A. Heneveld, Price, Heneveld, Huizenga, Cooper, Daniel Van Dyke, Grand Rapids, Mich., for plaintiff-appellant cross-appellee.

Charles B. Lyon, Donnelly, Maky, Renner & Otto, Cleveland, Ohio, for defendant-appellee cross-appellant.

Before WEICK and MERRITT, Circuit Judges, and CECIL, Senior Circuit Judge.

WEICK, Circuit Judge.

This action was brought in the District Court by American Seating Company (American) against National Seating Company (National) for the infringement of its U.S. Letters Patent No. 3,729,226 ('226), entitled "Single Pedestal Transit Chair." National, in its answer, pleaded the invalidity of the patent and denied infringement, and counterclaimed for a declaratory judgment of invalidity and non-infringement.

In a well-written opinion District Judge Contie held that the patent was invalid under: (1) 35 U.S.C. § 102, because it was anticipated by the prior art; (2) 35 U.S.C. § 103, because it was obvious to those skilled in the art at the time of its invention; and (3) 35 U.S.C. § 112, because it failed to describe particularly that which was claimed to be invented. Furthermore the District Court found that the patent, if valid, was infringed by some of National's seat models, but was not infringed by other National seat models.

Both parties appealed. American has appealed from those portions of the District Court's judgment which held the patent invalid and which found that certain of National's seat models did not infringe upon the patent. National has cross-appealed from the District Court's findings of infringement.

We affirm, holding the patent invalid, and therefore it is not necessary that we reach the issues of infringement.

## I

The '226 patent relates to a passenger bus seat. The device was invented around April, 1970, by Charles A. Barecki, an employee of American. The patent application (which application was assigned by Barecki to American) was filed in the U.S. Patent Office on June 4, 1971, and the patent was issued on April 24, 1973. American and National, at the time of suit, were the sole American manufacturers of inter-city passenger bus seats.[1]

The '226 patent (see diagram 1) discloses a center pedestal seat. The patent claims[2] show two side-by-side seats (11 and 12) mounted on a beam (13). The beam is attached to the wall of a bus by an angle iron (14). The beam is supported approximately midway between the seats by a pedestal shaped in the form of an inverted "T". The pedestal is composed of a single upright column (15) and a tubular foot (16), which foot extends fore and aft of the bus. The ends (17) of the foot are cut away at a 45° angle to provide access openings to the fastening bolts (19) used to secure the foot to the floor. The access openings can be covered by end caps (20). The end caps are held in place by a U-shaped spring plate (23), which has two shoulder rivets or lugs (21) snapped into receiving holes (22).

[See following illustration.]

---

1. Apparently there are two markets for passenger bus seats, the inter-city market and the intra-city market. Inter-city passenger bus seats are recliner type seats, while intra-city passenger bus seats are for the most part non-recliner or fixed-back type seats. At the time of suit American was the dominant manufacturer of intra-city passenger bus seats. National, although previously having manufactured intra-city passenger bus seats, no longer did so at the time of trial.

2. The '226 patent contains six claims. Of the claims, claims one and six are independent. The other claims are dependent upon claim one.

Patented Apr. 24, 1973

3,729,226

( D I A G R A M   1 )

FIG. 1

FIG. 2

FIG. 3

FIG. 4

FIG. 5

FIG. 6

INVENTOR

Chester J. Barecki

BY Dawson, Tilton, Fallon
and Lungmus

ATTORNEYS

Prior to the marketing of passenger bus seating with the tubular inverted "T" pedestal, the standard floor support used for passenger bus seats was aisle legs. American began to market passenger bus seats manufactured in conformity with the '226 patent in 1971. Since that time the tubular inverted "T" pedestal disclosed by the '226 patent has enjoyed considerable acceptance and commercial success as a mode of floor support for both inter-city and intra-city passenger bus seats. App. 1171–72.

In 1972 National first offered for sale a recliner passenger bus seat which used a tubular inverted "T" pedestal identical to the one disclosed by the '226 patent. Since its first use National has modified the pedestal's foot design so that the fastening bolts are located outside of the tube of the foot. At the time of trial all passenger bus seats manufactured by National used a tubular inverted "T" pedestal for the floor support.

The '226 patent sets forth the following advantages of its seat design, which advantages are alleged to be attributable to the tubular inverted "T" pedestal, over the traditional aisle leg passenger bus seat: (1) increased safety and ease in passenger ingress and egress; (2) increased leg room and storage space under the seat; (3) increased ease in maintenance and cleaning; and (4) improved appearance.

## II

■ Patentability is dependent upon three essential elements, namely, novelty, utility, and nonobviousness, articulated and defined in 35 U.S.C. §§ 101–03. These elements constitute separate tests of patentability, each of which must be met in order for a patent to be valid. *United States v. Adams*, 383 U.S. 39, 48, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966); *Reynolds Metals Co. v. Acorn Bldg. Components, Inc.*, 548 F.2d 155, 159 (6th Cir. 1977) and cases cited therein.

The District Court held that the '226 patent was invalid, *inter alia*, because it failed

to meet two of the above tests, that is, the structure disclosed by the patent was anticipated, thereby negating novelty, *Allied Wheel Prods., Inc. v. Rude*, 206 F.2d 752, 760 (6th Cir. 1953), and the patent was obvious in light of the prior art.

■ The starting point in analyzing a challenge to a patent's validity is the statutory presumption that the patent is valid under 35 U.S.C. § 282. The presumption of validity is based upon the acknowledged experience and expertise of the Patent Office and upon the fact that the issuance of a patent constitutes a type of administrative determination supported by evidence. *Parker v. Motorola, Inc.*, 524 F.2d 518, 521 (5th Cir. 1975), *cert. denied*, 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799 (1976); *see Deep Welding, Inc. v. Sciaky Bros., Inc.*, 417 F.2d 1227, 1234 (7th Cir. 1969), *cert. denied*, 397 U.S. 1037, 90 S.Ct. 1354, 25 L.Ed.2d 648 (1970); *Monroe Auto Equip. Co. v. Heckethorn Mfg. & Supply Co.*, 332 F.2d 406, 412–13 (6th Cir.), *cert. denied*, 379 U.S. 888, 85 S.Ct. 160, 13 L.Ed.2d 93 (1964). In cases in which relevant prior art was not considered by the Patent Office, the presumption is largely, if not wholly, vitiated. *Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193, 1196 (6th Cir. 1974); *Westwood Chem., Inc. v. Owens-Corning Fiberglas Corp.*, 445 F.2d 911, 916 (6th Cir. 1971), *cert. denied*, 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 786 (1972).

■ The degree by which the presumption is weakened in cases in which relevant prior art was not considered by the Patent Office, depends upon a balancing of the pertinence of the newly cited prior art and the pertinence of the prior art actually considered by the patent examiner in the prosecution of the patent application. *Tee-Pak, Inc. v. St. Regis Paper Co., supra*, 491 F.2d at 1193; *accord, Aluminum Co. of America v. Amerola Prods. Corp.*, 552 F.2d 1020, 1024–25 (3d Cir. 1977).

■ In the instant case the District Court determined that the prior art con-

sidered by the Patent Office did not include "any showing of the overall combination claimed, a center pedestal for a two passenger transportation seats [sic] or concealed fasteners for such pedestals." App. 60. Because the concepts embodied in the uncited prior art possess the most relevance in the determination of patentability in this case, we agree with the District Court that the presumption of validity has been completely destroyed.[3]

## III

Novelty does not exist if a patented device is anticipated by a substantially identical device whose elements perform substantially the same work in substantially the same manner. *Dunlop Co. v. Kelsey-Hayes Co.,* 484 F.2d 407, 414 (6th Cir. 1973), *cert. denied,* 415 U.S. 917, 94 S.Ct. 1414, 39 L.Ed.2d 471 (1974); *Monroe Auto Equip. Co. v. Heckethorn Mfg. & Supply Co., supra,* 332 F.2d at 414.

The District Court found that two prior art seats anticipated the '226 patent. The first of these seats is the Greyhound Tour Coach Seat. (See diagram 2 below.) That seat, designed, manufactured, and sold by National to Greyhound in the 1950's, discloses:

> Said Tour Coach seat includes side-by-side recliner seats 11 and 12 supported on frame beam 13, having aisle side 13–A and wall side 13–B and mounting means 14 provided to secure the wall side of the frame to the vehicle wall. Frame 13 is also supported by a pedestal P, including a column 15 and a foot 16. Such foot 16 includes a circular bottom plate 16–A welded to the bottom of the upright column and four spaced gussets 16–B inter-

connecting the column 15 and the bottom plate 16–A. The bottom plate 16–A has four equally circumferentially spaced countersunk mounting holes 19–A therein to receive fasteners to secure the same to the vehicle floor. The foot 16 is selectively covered by a two-piece shroud 20, 20–A, joined by screws 21, such shroud acting to conceal the four spaced fasteners. The above described pedestal P can be positioned at the center of the seat frame for some seats or in an intermediate position between the center of the frame and the aisle side for other seats. [App. 47–49]

The second seat found by the District Court to anticipate the '226 patent, is the American round base center pedestal seat sold by American to General Motors Corporation in 1969.[4] (See diagram 2.) That seat discloses:

> Such seat includes two side-by-side transit [*i. e.,* fixed-back] seats 11 and 12 mounted on a tubular beam 13, having an aisle-side 13–A and a wall-side 13–B. Such wall-side of the frame is provided with a flange means 14 to secure the frame to the vehicle wall. The center pedestal P is provided to support frame 13 in conjunction with the wall mount, such pedestal including an upright cylindrical tubular column 15 and a cast foot 16 extending fore and aft of such column. Such foot 16 includes a plurality of counter-sunk holes 19–A adapted to receive floor fasteners 19 to secure the pedestal to the floor. The cast foot was selectively covered by a two-piece stainless steel shroud 20, 20–A interconnected by screws 23, such shroud acting to conceal the fasteners. [App. 51]

---

3. For example, neither of the prior art seats found by the District Court to anticipate patent '226 (one of which was developed by American) was considered by the Patent Office. In addition, the seat which possessed the pedestal most similar to the pedestal disclosed by the '226 patent, namely, the Heywood Wake-

field Plane Mate Seat, was not cited by American to the patent examiner.

4. Hereinafter the Greyhound Tour Coach Seat and the American round base center pedestal seat will be referred to collectively as the "round base seats."

( DIAGRAM 2

INSERT E

( DIAGRAM 2 )

NATIONAL CENTER PEDESTAL TOUR COACH SEAT (1955-6)

DETAIL OF NATIONAL'S PEDESTAL FOR TOUR COACH SEAT

AMERICAN ROUND BASE CENTER PEDESTAL SEAT (1969)

DETAIL OF AMERICAN ROUND BASE PEDESTAL AND COVER

After setting forth what it believed to be the appropriate standard by which an anticipation is to be determined, namely, whether all the elements of a patented device *or their equivalents* are found in a single prior art device or description in which they perform substantially the same work in substantially the same way, the District Court found: (1) that there had been a public sale or use of the round base seats more than one year prior to the date of the patent application; (2) that the only significant distinction between the round base seats and the seat disclosed by the '226 patent related to the pedestals; (3) that the round base pedestals were the equivalents of the tubular inverted "T" pedestal; and (4) that, therefore, because all of the elements of

the '226 patent or their equivalents were found in single prior art references, the '226 patent was anticipated.

American contends that the District Court's finding of anticipation may not stand because it is premised upon a misunderstanding of the law of anticipation in that the Court impermissibly interjected into its determination the doctrine of equivalency. Although not clearly articulated, American appears to be arguing that patent law requires that the construction of the challenged device be identical to that of the prior art device or reference which is alleged to anticipate it, in order for there to be an anticipation. In this case, because even a perfunctory comparison of the round base pedestals and the tubular inverted "T" pedestal shows a substantial difference in their structures, American concludes that the '226 patent cannot possibly be anticipated by the round base seats.

■ American's assertion, to put it simply, is not in accordance with patent law as it relates to anticipation. This Court has repeatedly defined the proper standard with respect to anticipation as requiring that all the elements of a patented device *or their equivalents* be found in a single preexisting structure or description. *Tee-Pak, Inc. v. St. Regis Paper Co., supra,* 491 F.2d at 1198; *A. J. Indus., Inc. v. Dayton Steel Foundry Co.,* 394 F.2d 357, 359 (6th Cir. 1968); *Monroe Auto Equip. Co., v. Heckethorn Mfg. & Supply Co., supra,* 332 F.2d at 414; *Preformed Line Prods. Co. v. Fanner Mfg. Co.,* 328 F.2d 265, 271 (6th Cir.), *cert. denied,* 379 U.S. 846, 85 S.Ct. 56, 13 L.Ed.2d 51 (1964); *Firestone v. Aluminum Co. of America,* 285 F.2d 928, 930 (6th Cir. 1960); *Allied Wheel Prods., Inc. v. Rude, supra,* 206 F.2d at 760; *accord, Norton Co. v. Carborundum Co.,* 530 F.2d 435, 442 n. 18 (1st Cir. 1976); *Kahn v. Dynamics Corp. of America,* 508 F.2d 939, 943 (2d Cir.), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975); *Decca Ltd. v. United States,* 420 F.2d 1010, 1027–28, 190 Ct.Cl. 454, *cert. denied,* 400 U.S. 865, 91 S.Ct. 102, 27 L.Ed.2d 104 (1970); *Amphenol Corp. v. Gen-*

*eral Time Corp.,* 397 F.2d 431, 438 (7th Cir. 1968); *Greening Nursery Co. v. J & R Tool & Mfg. Co.,* 376 F.2d 738, 740 (8th Cir. 1967); *Inglett & Co. v. Everglades Fertilizer Co.,* 255 F.2d 342, 345 (5th Cir. 1958); Deller's Walker on Patents § 57 at 242, § 58 at 249, and § 77 at 374–76 (2d ed. 1964).

American next argues that even if the equivalency of the tubular inverted "T" pedestal and the round base pedestals is an appropriate consideration in determining the issue of anticipation, the District Court erred in finding the pedestals to be equivalents.

In *Olympic Fastening Systems, Inc. v. Textron, Inc.,* 504 F.2d 609, 619 (6th Cir. 1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1447, 43 L.Ed.2d 762 (1975), *quoting from Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), the Court said:

> Under the doctrine of equivalents "if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, *even though they differ in name, form, or shape.*" (Emphasis added).

■ A finding of equivalence is a determination of fact which cannot be disturbed unless clearly erroneous. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co., supra,* 339 U.S. at 609–10, 70 S.Ct. 854.

The essential purpose of the '226 patent was to provide a passenger bus seat which was superior to aisle leg seats aesthetically, in ease of cleaning and maintenance, in ease and safety of passenger egress and ingress, and in the amount of leg and storage room under the seat. These advantages stem from the use of a center pedestal floor support.

In our opinion it is patently obvious that the round base seats furnish, in the same manner, that is, by the use of a center pedestal floor support, the identical advantages over aisle leg seats.

■ The only significant difference between the seat disclosed by the '226 patent

619

and the round base seats, relates to the shape of the pedestal feet. There is no difference in either the function performed by the tubular inverted "T" pedestal and the round-based pedestal, or in the manner in which the two types of pedestals perform their function. Thus the District Court's finding that the pedestals are equivalents is not clearly erroneous.

In our opinion the District Court's determination that the '226 patent was invalid because it was anticipated, is correct.

IV

Although our agreement with the District Court's finding of anticipation is sufficient to affirm that Court's holding of invalidity, we note further that even if the '226 patent were not anticipated by prior art, the patent has other fatal deficiencies, namely, its obviousness.

The resolution of the question of obviousness in deciding patent validity requires the determination of several basic factual inquiries set out by the Supreme Court in *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966), as follows:

Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.

When a District Court makes the inquiries required by *Graham v. John Deere Co.*, *supra*, it makes findings of fact which are binding upon an appellate court, unless the findings are clearly erroneous. *Reynolds Metals Co. v. Acorn Bldg. Components, Inc.*, *supra*, 548 F.2d at 161; *Kolene Corp. v. Motor City Metal Treating, Inc.*, 440 F.2d 77, 81 (6th Cir.), *cert. denied*, 404 U.S. 886, 92 S.Ct. 203, 30 L.Ed.2d 169 (1971).

Once the factual setting has been established, the ultimate determination of obviousness is " 'a conclusion of law with which this Court may disagree on the established findings of fact.' " *Philips Indus., Inc. v.*

*State Stove & Mfg. Co.*, 522 F.2d 1137, 1139 (6th Cir. 1975), *quoting from Kolene Corp. v. Motor City Metal Treating, Inc.*, *supra*, 440 F.2d at 81; *accord, Reynolds Metals Co. v. Acorn Bldg. Components, Inc.*, *supra*, 548 F.2d at 161.

In holding the '226 patent invalid under § 103, the trial court found that none of the elements of the patent was new, and that they appeared in various prior art seats and patents. American contends that the District Court's finding that the '226 patent was a combination patent, is clearly erroneous because the patent contains one element not disclosed by the prior art, namely, the tubular inverted "T" pedestal.

We do not agree. The District Court made the following finding:

Further, inverted T Pedestals were known in the seating art previous to the date of the invention. See the Blink Patent 198,218 and Howell sequence seating chairs. The Hozeski and Barecki Patent 3,567,281 disclosed an inverted T-type pedestal which illustrates advantages concerning maintenance reduction and concealed fasteners to avoid dirt collection. The Greyhound Tour Coach seat, the BART seats, National's 1040 leg, the plugs used in the Heywood Wakefield Plane Mate seat, and the stainless steel cover used by American on its round base center pedestal seat all illustrate the use of selectively covered floor fasteners. [App. 54]

The District Court further found the following:

[T]he design of plaintiff's column and foot on the '226 Patent is obvious in light of the Heywood Wakefield inverted T Plane Mate pedestal (see diagram below). The Wakefield pedestal includes a tubular type upright to support chairs or seats and a channel shaped foot extending fore and aft therefrom. Such foot is provided with base plates at each end thereof, such base plates being provided with holes to receive floor fasteners.

[See following illustration.]

BARECKI
PATENT

HEYWOOD WAKEFIELD
INVERTED T PLANE
MATE PEDESTAL (1969)

[App. 55]

The District Court found, further, as follows:

Even a cursory glance at the Heywood Wakefield inverted T Plane Mate Pedestal, used in 1969, indicates an almost identical structure as that claimed by plaintiff in its patent. Plaintiff asserts that the Heywood Wakefield inverted pedestal provides for a channel at the bottom of the foot as opposed to a hollow tubular foot. The Court finds this distinction to be without merit as the same function and use results from the Heywood Wakefield inverted T Plane Mate Pedestal as does that in the plaintiff's invention in the '226 Patent.

Plaintiff contends that the pedestal of the patent in suit is distinguishable from the round base pedestal of the Tour Coach seat, as well as all other round base pedestals, and is unique in its function and advantages from round base pedestals. The Court cannot agree with this conclusion. This Court finds that the round based foot and the foot of the '226 Patent in suit are the functional equivalents of one another, and that the '226 foot does not function in any new or different mode, nor does it provide any new or different result. [App. 57–58]

Our independent examination of the evidence relied upon by the District Court persuades us that its finding that the '226 patent is a combination patent is not clearly erroneous, but to the contrary, is supported by substantial evidence.

As recognized by the District Court, because the '226 patent is composed of a combination of old elements, the combination, in order to be patentable, must produce a synergistic effect or result. *See Sakraida v. AG Pro, Inc.,* 425 U.S. 273, 282, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976); *Anderson's-Black Rock, Inc. v. Pavement Salvage Co.,* 396 U.S. 57, 61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); *Kearney & Trecker Corp. v. Cincinnati Milacron Inc.,* 562 F.2d 365, 370 (6th Cir. 1977); *Reynolds Metals Co. v. Acorn Bldg. Components, Inc., supra,* 548 F.2d at 161; *Philips Indus., Inc. v. State Stove & Mfg. Co., supra,* 522 F.2d at 1141; *Dickstein v. Seventy Corp.,* 522 F.2d 1294, 1298–99 (6th Cir. 1975), *cert. denied,* 423 U.S. 1055, 96 S.Ct. 787, 46 L.Ed.2d 644 (1976).

In *Kearney & Trecker Corp. v. Cincinnati Milacron Inc., supra,* 562 F.2d at 370, this Court, speaking through Circuit Judge

Lively, recently defined synergism as follows:

> The synergistic test is met when a combination of elements produces an effect which is "greater than the sum of the several effects taken separately." *Anderson's-Black Rock, supra,* 396 U.S. at 61, 90 S.Ct. at 308. There must be an "impalpable something" in the combination itself which consists of previously known elements to pass the requirement of nonobviousness. *Philips Industries, supra,* 522 F.2d at 1141. Stated another way, there must be some "unusual or surprising result" from a combination of old elements. *Dickstein, supra,* 522 F.2d at 1299.

We cannot agree with American's assertion that the combination of the old elements in the '226 patent to produce a passenger bus seat which is superior to aisle leg seats because of its increased storage and leg room under the seat, its increased ease in maintenance and cleaning, its improved aesthetic qualities, and its increased ease in passenger egress and ingress, can be characterized properly as synergistic. The District Court found that several prior art seats, namely, the Plane Mate Seat and the round base seats, furnished the identical advantages over aisle leg seats. This finding of fact is supported by substantial evidence and is not clearly erroneous.

Further, we cannot accept American's argument that a synergistic effect is provided by the alleged improved crashworthiness of the seat disclosed by the '226 patent, which improved crashworthiness is the result of an alleged increase in the energy absorption characteristics of the tubular inverted "T" pedestal. This function is completely omitted in the patent's specifications. No argument as to improved crashworthiness was raised before the Patent Office. As stated by the Court in *Graham v. John Deere Co., supra,* 383 U.S. at 25, 86 S.Ct. at 697, *quoting from Lincoln Eng'r Co. v. Stewart-War-*

*ner Corp.,* 303 U.S. 545, 550, 58 S.Ct. 662, 82 L.Ed. 1008 (1938):

> If this were so vital an element in the functioning of the apparatus, it is strange that all mention of it was omitted.

Moreover, American's evidence of improved crashworthiness of the '226 patent consists only of a comparison of the energy absorption characteristics of the tubular inverted "T" pedestal and aisle legs. American introduced no evidence that the tubular inverted "T" pedestal is more crashworthy than other types of prior art pedestals such as the pedestals of the round base seats. Without such evidence we fail to see how we, or the District Court, could conclude that the combination of the components of the '226 patent produces a new or different function which is absent in the prior art.

In our opinion, American's suggestion that a synergistic result is evidenced by the alleged improvement in crashworthiness is nothing more than an afterthought of an astute patent trial attorney. *Graham v. John Deere Co., supra,* 383 U.S. at 25, 86 S.Ct. 684; *Lincoln Eng'r Co. v. Stewart-Warner Corp., supra,* 303 U.S. at 550, 58 S.Ct. 662.[5]

We agree with the District Court's conclusion that the '226 patent fails to provide the requisite synergistic effect needed by combination patents, for validity. As stated by the Supreme Court in *Sakraida v. AG Pro, Inc., supra,* 425 U.S. at 282, 96 S.Ct. at 1537:

> [T]his patent simply arranges old elements with each performing the same function it had been known to perform, although perhaps producing a more striking result than in previous combinations. Such combinations are not patentable under standards appropriate for a combination patent. *Great A. & P. Tea Co. v. Supermarket Corp., supra* [340 U.S. 147,

5. The District Court also found that the alleged safety feature of the '226 patent "would necessarily relate to the tensile strength, gauge, size, shape, and type of material used in said upright column and foot. The patent in issue is silent as to any such references." [App. 60–61.] Based on this finding, the Court held the patent invalid for failing to point out particularly, and to claim distinctly the subject matter of the invention.

71 S.Ct. 127, 95 L.Ed. 162 (1950)].[6]; *Anderson's-Black Rock v. Pavement Co., supra.* Under those authorities this assembly of old elements . . . falls under the head of "the work of the skilful mechanic, not that of the inventor." *Hotchkiss v. Greenwood,* [52 U.S. (11 How.) 248, 267, 13 L.Ed. 683 (1850)].

We recognize that certain secondary considerations, such as commercial success, long felt but unresolved needs, and the failure of others, may have some relevance in the determination of obviousness. *Graham v. John Deere Co., supra,* 383 U.S. at 17–18, 86 S.Ct. 684; *Reynolds Metals Co. v. Acorn Bldg. Components, Inc., supra,* 548 F.2d at 161–62. The District Court, in resolving the obviousness issue, did not consider and make findings with respect to American's contentions relating to (1) the long felt need for and commercial success of the '226 patent, (2) the failure of National to develop a viable center pedestal passenger bus seat, and (3) National's copying of the tubular inverted "T" pedestal disclosed by the '226 patent, within a short period after American placed it on the market. We find no reversible error in the District Court's failure to take into account these secondary factors in reaching its decision on the question of obviousness in this case.

Although in a close case secondary factors may tip the scales toward patent validity, they cannot save a patent from invalidity when, as in the case here, there is such a plain lack of invention, and obviousness is clear. *Graham v. John Deere Co., supra,* 383 U.S. at 35–36, 86 S.Ct. 684; *Kamei-Autokomfort v. Eurasian Automotive Prods.,* 553 F.2d 603, 606 (9th Cir.), *cert. denied,* 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977); *T. P. Labs., Inc. v. Huge,* 371 F.2d 231, 236 (7th Cir. 1966).

The '226 patent is invalid because it was anticipated by the prior art under the provisions of 35 U.S.C. § 102, because it was obvious to one of ordinary skill in the art under the provisions of 35 U.S.C. § 103, and because it failed to describe particularly

that which was claimed to be invented under 35 U.S.C. § 112. Because the patent is invalid, it is unnecessary to reach the other issues raised by this appeal, including the issues of infringement.

Costs are to be assessed against American.

Affirmed.

---

**6.** The patent in suit is just "as flimsy and as spurious" as that involved in *Great A. & P. Tea*  *Co., supra. Cf., id.* at 158, 71 S.Ct. 127 (Douglas, J., concurring).